**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLNOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADVANTAGE FUNDING COMMERCIAL CAPITAL CORP., a New York corporation | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| RP QUALITY, INC. an Illinois corporation; QUO VADIS EXPRESS, INC. an Illinois corporation; and RENATA JASINSKA, individually, | ) ) ) ) ) | Amount Claimed: $395,984.00, plus prejudgment interest at the rate of five percent (5%) per annum and attorneys' fees and costs. |
| Defendants. | ) ) | |

**VERIFIED COMPLAINT**

NOW COMES Plaintiff, ADVANTAGE FUNDING COMMERCIAL CAPITAL CORP.,

a New York corporation ("Advantage"), by and through counsel, and for its Complaint against

Defendants RP QUALITY, INC., an Illinois corporation ("RP Quality"), QUO VADIS EXPRESS,

INC., an Illinois corporation ("Express"), and RENATA JASINSKA, individually ("Jasinska") (or

collectively referred to as "Defendants"), states as follows:

**PARTIES**

1.      Advantage is a New York corporation with its principal place of business located

at 3 Dakota Dr., Lake Success, NY 11042, and is fully authorized to do business in the State of

Illinois.

2.      RP Quality is an Illinois corporation with its principal place of business located at

595 Alcoa Ln., Hoffman Estates, IL 60169. Upon information and belief, based on records of the

Illinois Secretary of State, RP Quality's sole shareholder and officer is Jasinska.

1

3.      Express is an Illinois corporation with its principal place of business located at 600 Bonnie Ln., Elk Grove Village, IL 60007. Upon information and belief, based on records of the Illinois Secretary of State, Express' sole shareholder and officer is Jasinska.

4.      Jasinska is a citizen of the State of Illinois residing at 595 Alcoa Ln., Hoffman Estates, IL 60169.

### JURISDICTION

5.      Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332.  The parties are located in different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Advantage's claims occurred in this district, RP Quality and Express conduct business in this district, and Jasinska resides in this district.

### BACKGROUND – RP QUALITY

7.      On or about March 19, 2018, Advantage and RP Quality entered into a Master Promissory Note and Security Agreement (corresponding Account No. ████0631) ("RP Quality MSA"), wherein Advantage, as lender, financed the purchase of a 2015 International 4300 Durastar Box Truck, VIN: 1HTMMMML7FH690019, and RP Quality, as borrower, granted Advantage a first priority security interest in the same. A true and correct copy of the RP Quality MSA is attached hereto as Exhibit 1. A copy of the title reflecting Advantage's lien is attached hereto as Exhibit 2.

2

8.    On or about March 19, 2018, to induce Advantage to enter into the RP Quality MSA and subsequent transactions, Jasinska executed a Continuing Guaranty in which she personally guaranteed the full and prompt payment and performance of all of RP Quality's present and future indebtedness and obligations with Advantage (the "RP Quality Continuing Guaranty"). A true and correct copy of the RP Quality Continuing Guaranty, is attached hereto and incorporated in Exhibit 3.

a)    **RP Quality MSA with Account No. ▆▆▆0631**

9.    Pursuant to the RP Quality MSA, RP Quality agreed to make forty-eight (48) consecutive monthly payments of $1,436.00, plus applicable fees and costs.  *See* Exhibit 1.

10.    RP Quality failed to make the payment due November 22, 2018, and all payments due thereafter.

11.    Failure to make the monthly payments is an event of default under the RP Quality MSA and the RP Quality Continuing Guaranty.  *See* Exhibits 1 and 3.

12.    As a result of the default under the RP Quality MSA and the RP Quality Continuing Guaranty, Advantage is entitled to payment of the accelerated balance, plus attorneys' fees and costs, and all other relief provided under the RP Quality MSA and the RP Quality Continuing Guaranty.  *See* Exhibits 1 and 3.

13.    Advantage demanded payment from the Defendants pursuant to the RP Quality MSA and RP Quality Continuing Guaranty, but the Defendants have failed and refused to make payment.

14.    Advantage has fully performed its obligations under the terms of the RP Quality MSA.

b)      **First Addendum to RP Quality MSA with Account No. ████1051**

15.     On or about May 1, 2018, RP Quality entered into an addendum to the RP Quality MSA with Advantage (corresponding Account No. ████1051) (the "RP Quality First Addendum"), for the purchase of a 2017 HINO 268 Box Truck, VIN: 1HTMM5PVNJ8JV0H4S63427. RP Quality granted Advantage a first priority security interest in the same. A true and correct copy of the RP Quality First Addendum is attached hereto as Exhibit 4. A copy of the title reflecting Advantage's lien is attached hereto as Exhibit 5.

16.     Pursuant to the RP Quality First Addendum, RP Quality agreed to make sixty (60) consecutive monthly payments of $1,503.00, plus applicable fees and costs.  *See* Exhibit 4.

17.     RP Quality failed to make the payment due October 1, 2018, and all payments due thereafter.

18.     Failure to make the monthly payments is an event of default under the RP Quality MSA and the RP Quality Continuing Guaranty.  *See* Exhibits 1 and 3.

19.     As a result of the default, Advantage repossessed the 2017 HINO 268 Box Truck, VIN: 1HTMM5PVNJ8JV0H4S63427, which is pending sale at auction.

20.     Upon repossession, Advantage found that several key components of the 2017 HINO 268 Box Truck, VIN: 1HTMM5PVNJ8JV0H4S63427 were missing, such as the engine, transmission, radiator, and all attaching engine components ("Missing Collateral").

21.     As a result of the default under the RP Quality MSA and the RP Quality Continuing Guaranty, Advantage is entitled to payment of the accelerated balance, plus attorneys' fees and costs, and all other relief provided under the RP Quality MSA and the RP Quality Continuing Guaranty.  *See* Exhibits 1 and 3.

4

22.     Advantage demanded payment from the Defendants pursuant to the RP Quality MSA and RP Quality Continuing Guaranty, but the Defendants have failed and refused to make payment.

23.     Advantage has fully performed its obligations under the terms of the RP Quality MSA.

**c)     Second Addendum to RP Quality MSA with Account No. ███ 1529**

24.     On or about May 17, 2018, RP Quality entered into an addendum to the RP Quality MSA with Advantage (corresponding Account No. ███ 1529) (the "RP Quality Second Addendum"), for the purchase of a 2017 International 4300 Durastar Box Truck, VIN: 1HTMMMML3HH430381. RP Quality granted Advantage a first priority security interest in the same. A true and correct copy of the RP Quality Second Addendum is attached hereto as Exhibit 6. A copy of the title reflecting Advantage's lien is attached hereto as Exhibit 7.

25.     Pursuant to the RP Quality Second Addendum, RP Quality agreed to make sixty (60) consecutive monthly payments of $1,633.00, plus applicable fees and costs. *See* Exhibit 6.

26.     RP Quality failed to make the payment due October 17, 2018, and all payments due thereafter.

27.     Failure to make the monthly payments is an event of default under the RP Quality MSA and the RP Quality Continuing Guaranty. *See* Exhibits 1 and 3.

28.     As a result of the default, Advantage repossessed the 2017 International 4300 Durastar Box Truck, VIN: 1HTMMMML3HH430381, which is pending sale at auction.

29.     Upon repossession, Advantage found that several key components of the 2017 International 4300 Durastar Box Truck, VIN: 1HTMMMML3HH430381 were missing, such as

the engine, transmission, radiator, and all attaching engine components (with the Missing Collateral in ¶ 20, collectively referred to as the "Missing Collateral").

30.     As a result of the default under the RP Quality MSA and the RP Quality Continuing Guaranty, Advantage is entitled to payment of the accelerated balance, plus attorneys' fees and costs, and all other relief provided under the RP Quality MSA and the RP Quality Continuing Guaranty. *See* Exhibits 1 and 3.

31.     Advantage demanded payment from the Defendants pursuant to the RP Quality MSA and RP Quality Continuing Guaranty, but the Defendants have failed and refused to make payment.

32.     Advantage has fully performed its obligations under the terms of the RP Quality MSA.

## BACKGROUND – EXPRESS

33.     On or about August 20, 2018, Advantage and Express entered into a Master Promissory Note and Security Agreement (corresponding Account No. ████2497) ("Express MSA"), wherein Advantage, as lender, financed the purchase of a 2015 International 4300 Durastar Box Truck, VIN: 1HTMMMMLXGH145353 and a 2016 International 4300 Durastar Box Truck, VIN: 3HAMMMML0GL112209, and Express, as borrower, granted Advantage a security interest in the same. A true and correct copy of the Express MSA is attached hereto as Exhibit 8.

34.     On or about August 22, 2018, Advantage and Express entered into an addendum to the Express MSA to amend the vehicle year of the 2015 International 4300 Durastar Box Truck, VIN: 1HTMMMMLXGH145353 to 2016 International 4300 Durastar Box Truck, VIN:

1HTMMMMLXGH145353 ("Express Addendum"). A true and correct copy of the Express Addendum is attached hereto as Exhibit 9.

35.     On or about August 20, 2018, to induce Advantage to enter into the Express MSA, Jasinska executed a Continuing Guaranty in which she personally guaranteed the full and prompt payment and performance of all of Express's present and future indebtedness and obligations with Advantage (the "Express Continuing Guaranty"). A true and correct copy of the Express Continuing Guaranty, is attached hereto and incorporated in Exhibit 10.

36.     Pursuant to the Express MSA, Express agreed to make forty-eight (48) consecutive monthly payments of $3,436.00, plus applicable fees and costs.  *See* Exhibit 8.

37.     Express failed to make the payment due October 22, 2018, and all payments due thereafter.

38.     Failure to make the monthly payments is an event of default under the Express MSA and the Express Continuing Guaranty.  *See* Exhibits 8 and 10.

39.     As a result of the default under the Express MSA and the Express Continuing Guaranty, Advantage is entitled to payment of the accelerated balance, plus attorneys' fees and costs, and all other relief provided under the Express MSA and the Express Continuing Guaranty. *See* Exhibits 8 and 10.

40.     Advantage demanded payment from the Defendants pursuant to the Express MSA and Express Continuing Guaranty, but the Defendants have failed and refused to make payment.

41.     Advantage has fully performed its obligations under the terms of the Express MSA.

## COUNT I – BREACH OF CONTRACT
## AGAINST DEFENDANT RP QUALITY, INC.

42.     Advantage repeats and realleges Paragraphs 1 through 41 as though fully set forth herein.

43.     RP Quality defaulted under the RP Quality MSA by failing and refusing to make payments when due.

44.     Because of RP Quality's default under the RP Quality MSA, RP Quality is indebted to Advantage in the amount of $234,492.00 plus prejudgment interest at five percent (5%) per annum continuing to accrue until judgment is made, plus attorneys' fees and costs.

WHEREFORE, Plaintiff Advantage respectfully requests that the Court enter judgment in its favor and against Defendant RP Quality in the amount of $234,492.00, plus prejudgment interest at five percent (5%) per annum continuing to accrue until judgment is made, plus attorneys' fees and costs, and grant such other and further relief as this Court deems just.

## COUNT II – BREACH OF CONTRACT
## AGAINST DEFENDANT QUO VADIS EXPRESS, INC.

45.     Advantage repeats and realleges Paragraphs 1 through 44 as though fully set forth herein.

46.     Express defaulted under the Express MSA by failing and refusing to make payments when due.

47.     Because of Express's default under the Express MSA, Express is indebted to Advantage in the amount of $161,492.00 plus prejudgment interest at five percent (5%) per annum continuing to accrue until judgment is made, plus attorneys' fees and costs.

WHEREFORE, Plaintiff Advantage respectfully requests that the Court enter judgment in its favor and against Defendant Express in the amount of $161,492.00, plus prejudgment interest at five percent (5%) per annum continuing to accrue until judgment is made, plus attorneys' fees and costs, and grant such other and further relief as this Court deems just.

<u>**COUNT III- BREACH OF CONTINUING GUARANTIES**</u>
<u>**AGAINST DEFENDANT RENATA JASINSKA**</u>

48.     Advantage repeats and realleges Paragraphs 1 through 47 as though fully set forth herein.

49.     Jasinska defaulted under the Express Continuing Guaranty and RP Quality Continuing Guaranty by failing and refusing to make payments when due.

50.     Because of Jasinska's default under the Express Continuing Guaranty and RP Quality Continuing Guaranty, Jasinska is indebted to Advantage in the amount of $395,984.00, plus prejudgment interest at five percent (5%) per annum continuing to accrue until a judgment is made, plus attorneys' fees and costs.

WHEREFORE, Plaintiff Advantage respectfully requests that the Court enter judgment in its favor and against Defendant Jasinska in the amount of $395,984.00, plus prejudgment interest at five percent (5%) per annum continuing to accrue until a judgment is made, plus attorneys' fees and costs, and grant such other and further relief as this Court deems just.

<u>**COUNT IV - REPLEVIN AGAINST RP QUALITY, INC. UNDER**</u>
<u>**735 Ill. Comp. Stat. § 5/19-101**</u>

51.     Advantage re-alleges paragraphs 1 through 50 as though fully set forth herein.

52.     This claim is brought pursuant to 735 ILCS § 5/19-101, et seq., made applicable to this proceeding pursuant to 28 U.S.C. § 1652, for the collateral located in Illinois.

53.     Advantage is the first lienholder on the vehicles as evidenced by its lien(s) reflected on the titles to the vehicles.

54.     Due to RP Quality's default under the RP Quality MSA (and related Addenda), Advantage is entitled to the return of and the exclusive possession of the vehicles, specifically:

a.      One (1) 2015 International 4300 Durastar Box Truck, VIN: 1HTMMMML7FH690019 with a fair market value of $35,000.00.

55.     RP Quality refuses to surrender the vehicles voluntarily.  Upon information and belief, the vehicles are located at 595 Alcoa Ln., Hoffman Estates, IL 60169.

56.     RP Quality is wrongfully and unlawfully detaining the vehicles from Advantage.

57.     The vehicles have not been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of such plaintiff, or against him or her individually, nor seized under any lawful process against the goods and chattels of such plaintiff subject to such lawful process, nor held by virtue of any order for replevin against such plaintiff.

58.     Advantage has made demand upon RP Quality for the return of the vehicles, but RP Quality refused to return the same.

WHEREFORE, Advantage respectfully requests that this Court enter an Order of Replevin, directing the US Marshall or any other designated officer, to use all necessary force to repossess the vehicles, or any portion thereof, from RP Quality at 595 Alcoa Ln., Hoffman Estates, IL 60169 or wherever they may be found, plus attorney's fees and costs, as well as all other and further relief which this Court deems just.

## COUNT V - REPLEVIN AGAINST QUO VADIS EXPRESS, INC. UNDER 735 Ill. Comp. Stat. § 5/19-101

59.     Advantage re-alleges paragraphs 1 through 58 as though fully set forth herein.

60.     This claim is brought pursuant to 735 ILCS § 5/19-101, et seq., made applicable to this proceeding pursuant to 28 U.S.C. § 1652, for the collateral located in Illinois.

61.     Advantage has a valid security interest in the vehicle(s) as evidenced by the Express MSA.

62.     Due to Express's default under the Express MSA, Advantage is entitled to the return of and the exclusive possession of the vehicle(s), specifically:

     a.     One (1) 2016 International 4300 Durastar Box Truck, VIN: 1HTMMMMLXGH145353 with a fair market value of $45,000.00;

     b.     One (1) 2016 International 4300 Durastar Box Truck, VIN: 3HAMMMML0GL112209 with a fair market value of $45,000.00.

63.     Express refuses to surrender the vehicle(s) voluntarily.  Upon information and belief, the vehicles are located at 600 Bonnie Ln., Elk Grove Village, IL 60007.

64.     Express is wrongfully and unlawfully detaining the vehicles from Advantage.

65.     The vehicles have not been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of such plaintiff, or against him or her individually, nor seized under any lawful process against the goods and chattels of such plaintiff subject to such lawful process, nor held by virtue of any order for replevin against such plaintiff.

66.     Advantage has made demand upon Express for the return of the vehicles, but Express refused to return the same.

WHEREFORE, Advantage respectfully requests that this Court enter an Order of Replevin, directing the US Marshall or any other designated officer, to use all necessary force to repossess the vehicles, or any portion thereof, from Express at 600 Bonnie Ln., Elk Grove Village, IL 60007

or wherever they may be found, plus attorney's fees and costs, as well as all other and further relief which this Court deems just.

## COUNT VI - DETINUE AGAINST
## RP QUALITY, INC. AND RENATA JASINSKA

67.     Advantage re-alleges paragraphs 1 through 66 as though fully set forth herein.

68.     Jasinska is the Agent, Secretary, and President of RP Quality and controls its operations, including the vehicles.

69.     Due to RP Quality's default under the RP Quality MSA, Advantage is entitled to the return of and the exclusive possession of the vehicles, specifically:

    a.      One (1) 2015 International 4300 Durastar Box Truck, VIN: 1HTMMMML7FH690019.

70.     RP Quality and Jasinska refuse to surrender the vehicles voluntarily.

71.     RP Quality and Jasinska are wrongfully and unlawfully detaining the vehicles from Advantage.

72.     Advantage is entitled to an order directing RP Quality and Jasinska to turn over the Collateral within seven (7) calendar days, or such other reasonable time period as the Court may determine.

WHEREFORE, Advantage respectfully requests that this Court enter an Order compelling RP Quality and Jasinska to return the vehicles to Advantage by delivering the same to Advantage's agent (to be designated by Advantage) within 7 calendar days; and Advantage requests all other relief that this Court deems just.

## COUNT VII - DETINUE AGAINST
## QUO VADIS EXPRESS, INC. AND RENATA JASINSKA

73.     Advantage re-alleges paragraphs 1 through 72 as though fully set forth herein.

74.     Jasinska is the President of Express and controls its operations, including the vehicles.

75.     Due to Express's default under the Express MSA, Advantage is entitled to the return of and the exclusive possession of the vehicles, specifically:

      a.     One (1) 2016 International 4300 Durastar Box Truck, VIN: 1HTMMMMLXGH145353;

      b.     One (1) 2016 International 4300 Durastar Box Truck, VIN: 3HAMMMML0GL112209.

76.     Express and Jasinska refuse to surrender the vehicles voluntarily.

77.     Express and Jasinska are wrongfully and unlawfully detaining the vehicles from Advantage.

78.     Advantage is entitled to an order directing Express and Jasinska to turn over the Collateral within seven (7) calendar days, or such other reasonable time period as the Court may determine

WHEREFORE, Advantage respectfully requests that this Court enter an Order compelling Express and Jasinska to return the vehicles to Advantage by delivering the same to Advantage's agent (to be designated by Advantage) within 7 calendar days; and Advantage requests all other relief that this Court deems just.

## COUNT VIII - COVERSION AGAINST
## RP QUALITY, INC. AND RENATA JASINSKA

79.     Advantage realleges paragraphs 1 through 78 as though fully set forth herein.

80.     As the sole corporate officer of RP Quality, Jasinska actively participated in converting the Missing Collateral by: failing to return the Missing Collateral to Advantage upon demand; hiding or detaining the Missing Collateral; and/or disposing of the Missing Collateral by sale or transfer.

81.     Pursuant to the RP Quality MSA, Advantage is entitled to possession of the Missing Collateral.

82.     Pursuant to the RP Quality MSA, Advantage is entitled to immediate possession of the Missing Collateral.

83.     Jasinska asserts wrongful control, dominion or ownership over the Missing Collateral by: failing to return the Missing Collateral to Advantage upon demand; hiding or detaining the Missing Collateral; and/or disposing of the Missing Collateral by sale or transfer.

84.     Advantage demanded that RP Quality and Jasinska, individually, return the Missing Collateral, but RP Quality and Jasinska have failed to return the same.

85.     Jasinska's detention of or disposition of the Missing Collateral is willful or, alternatively, with gross negligence to indicate a wanton disregard of Advantage's right to the Missing Collateral

86.     Due to Jasinska depriving Advantage of the Missing Collateral, Advantage has been damaged in the amount of the value of the Missing Collateral, estimated at as approximately $10,000.00, depending upon condition.

WHEREFORE, Plaintiff Advantage respectfully requests that the Court enter judgment in

14

its favor and against Defendants RP Quality and Jasinska in the amount of $10,000.00, plus

punitive damages, plus statutory interest at the rate of five percent (5%) per annum, and grant such

other and further relief as this Court deems just.

ADVANTAGE FUNDING COMMERCIAL CAPITAL CORP.

By:     /s/ Alex Darcy_____
          Askounis & Darcy, PC
          444 N. Michigan Avenue, Suite 3270
          Chicago, IL 60611
          (312)784-2400 (t)
          (312)784-2410 (f)
          adarcy@askounisdarcy.com
          jramos@askounisdarcy.com

## **VERIFICATION**

Under penalties as provided by law, the undersigned certifies that the statements set forth in the Complaint for Replevin, Detinue, and Money Damages are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Kenneth Ferrer
Legal Account Collector
Advantage Funding Commercial
Capital Corp.

Subscribed and sworn to before me

this 28 day of September, 2019

Notary Public



# Advantage Funding
### Transportation Financing & Leasing Specialists

3 Dakota Drive, Suite 210 Lake Success, NY 11042

Phone (718) 392-1300 Fax (718)-392-3933

## MASTER PROMISSORY NOTE AND SECURITY AGREEMENT

███0631

**THIS MASTER PROMISSORY NOTE AND SECURITY AGREEMENT**, the "Agreement", entered into this March 19, 2018 by and between Advantage Funding Commercial Capital Corp., a New York corporation having its principal executive office at 3 Dakota Drive, Lake Success, NY 11042, or its assigns, hereinafter referred to as "Creditor" and RP Quality, Inc., a Illinois Corporation (State of Domicile and Type of Business Organization) having its principal office 595 Alcoa Ln Hoffman Estates, IL 60169-1603 hereinafter referred to as "Obligor".

## ARTICLE 1 – PAYMENT AND SECURITY INTEREST

| Year | Make | Model | VIN/Serial Number |
|------|------|-------|-------------------|
| 2015 | INTERNATIONAL | DuraStar 4300 w/Mickey VB26097 26Ft Box Truck S/N: 9557V14 | 1HTMMMML7FH690019 |

| A. PAYMENTS | B. TERM OF AGREEMENT | C. COMMENCEMENT DATE |
|---|---|---|
| 48 Monthly Payments of $1,436.00 and a Final Payment of $0.00 | 48 Months 48 Months Remaining | *March 22*, 2018 |

| D. MATURITY DATE | E. INITIAL PAYMENT | F. ADVANCE |
|---|---|---|
| *March 22, 2022* | Initial Payment of: $695.00 Shall be applied to: First Payment $0.00 Last Payment $0.00 Acquisition Fee $695.00 | Sale Price: $60,220.94 Down Payment: $5,000.00 Sales Tax: $0.00 Advance: $55,220.94 |

X *Uno* Initials

**G. Promise to Pay.** Obligor promises to pay to the order of Creditor the principal sum of $55,220.94 ("Advance") with interest thereon prior to an Event of Default, as set forth herein. Obligor shall make the monthly payments stated in Article 1A above or in any Exhibit A executed on or after the date of this Agreement, plus any final payment stated in Article 1A above or in any Exhibit A executed after the date of this Agreement, commencing on the Commencement Date stated in Article 1C above or, with respect to Vehicle(s) and/or Equipment described above or in any Exhibit A executed after the date of this Agreement, the date stated in that Exhibit A, and continuing on the same day of each month thereafter with no right of prepayment except that if at least 12 monthly payments have been made as scheduled (and not earlier or later than scheduled), and no event of default under this Agreement or any other agreement between Obligor and Creditor or its affiliates has occurred, Obligor may prepay if the

EXHIBIT
1

additional prepayment penalty under Article 2N ("Prepayment Penalty") is first paid to Creditor. The final payment of all outstanding principal, together with all accrued but unpaid interest and all fees, cost, expenses and other sums which may become due hereunder (collectively, the "Indebtedness") shall be due and payable on the Maturity Date stated in Article1D or, if any Exhibit A is executed after the date of this Agreement, the date set forth in that Exhibit A with respect to payments for Vehicle(s) and/or Equipment described in that Exhibit A. Notwithstanding the foregoing, with the exception of the security deposit described below in Article 6, payments shall not commence until at least 30 days from the Commencement Date. Payment of all periodic installments and other amounts payable hereunder shall be made to Creditor at its above stated address, or as it shall otherwise designate in writing.

**H. Security Interest.** The Obligor hereby grants to Creditor a first priority security interest in the following collateral: (a) Vehicle(s) and/or Equipment described above or in the attached and any subsequent Exhibit A signed by the parties; (b) Equipment described above or in the attached and any subsequent Exhibit A signed by the parties (c) any additional collateral described above or in the attached or any subsequent Exhibit A signed by the parties, (d) all cash and non-cash proceeds and products of the foregoing Vehicle(s) and/or Equipment, and additional collateral, all proceeds of insurance thereon, all accessions thereto, all substitutions therefor and all additions thereto (said property, proceeds, products, substitutions, accessions and additions being herein called "Collateral"). Obligor confirms the Collateral will be used solely for commercial or business purposes (and not for consumer, personal, family or household purposes), as security for the repayment by Obligor to Creditor of the amounts specified in the Advance (and including any amounts specified in any attached or subsequent Exhibit A or promissory note which may be executed by Obligor specifically relating to this Agreement) and the performance by Obligor of all of its other obligations pursuant to the terms and conditions of this Agreement. Obligor grants a first priority purchase money security interest in any Collateral purchased with the Advance. The Advance will be used solely for commercial or business purposes and consumer protections will not apply to the transaction described in this Agreement.

**I. Term.** The Term of this Agreement shall be the number of months stated in Article1B above, commencing on the date stated in Article1C above. Obligor authorizes Creditor to insert such Commencement Date herein.

## ARTICLE 2- LOAN PROVISIONS

**A. Delivery of Vehicle(s) and/or Equipment.** Obligor shall accept the Vehicle(s) and/or Equipment upon its delivery and authorizes Creditor to insert herein the serial numbers and any additional description of the items of Vehicle(s) and/or Equipment so delivered. If Obligor wrongfully refuses delivery of any item of Vehicle(s) and/or Equipment for any reason whatsoever, then and in that event, Obligor agrees to indemnify and hold Creditor harmless from and against, and agrees to protect and (at Creditor's option) to defend Creditor at Obligor's sole expense against (with counsel acceptable to Creditor), any claim or liability and damage by Seller with reference to such item of Vehicle(s) and/or Equipment.

**B. Control of Vehicle(s) and/or Equipment.** The Vehicle(s) and/or Equipment shall be at all times under the sole and absolute control of Obligor, subject to the rights of Creditor as provided herein.

**C. Maintenance.** Obligor shall, at its own expense, keep and maintain the Vehicle(s) and/or Equipment in good operating condition and working order, and in compliance with all applicable regulations, including all repairs and maintenance, mechanical or otherwise occasioned by normal use, accident or casualty. In the event of accident or casualty loss, Obligor shall notify Creditor within 24 hours of such accident or casualty and disclose the extent of damage and proposed method of repair. Creditor may, at its option, in the event of an accident, require repairs according to manufacturer specifications facilities designated by Creditor. Further, Obligor shall perform all preventive maintenance required to insure full validation of any manufacturer's warranties, if applicable. Obligor shall maintain and make available all

records required by applicable law. Obligor will comply with all manufacturer recall notices for Vehicle(s) and/or Equipment.

**D. Inspection.** Creditor is hereby given the right, but not the duty, upon reasonable notice to Obligor and during its regular business hours, to inspect the Vehicle(s) and/or Equipment on the premises of Obligor, or wherever located. In the event that Creditor determines that Obligor is not maintaining the Vehicle(s) and/or Equipment in good operating condition, or does not make the Vehicle(s) and/or Equipment available for inspection, Creditor shall give Obligor written notice of its determination, and Obligor shall have fourteen (14) days to cure same. Failure to cure by Obligor shall be deemed an event of default hereunder. Any costs or expenses incurred by Creditor in connection with this paragraph shall be the obligation of the Obligor, payable within thirty (30) days of invoice. Any amounts due and owing hereunder shall constitute a part of this Agreement and be incorporated herein and shall be secured by the Vehicle(s) and/or Equipment purchased herein. Any default by Obligor in the payment thereof when due, shall entitle Creditor to utilize all available remedies for breach hereunder, including, but not be limited to, self-help recovery of possession. Obligor agrees to keep Creditor informed at all times of Obligor's principal place of business and the principal garage and location of the Vehicle(s) and/or Equipment.

**E. WARRANTIES. OBLIGOR REPRESENTS THAT IT HAS SELECTED THE VEHICLE(S) AND/OR EQUIPMENT AND OBLIGOR AGREES THAT CREDITOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, TITLE TO OR THE SUITABILITY OF THE VEHICLE(S) AND/OR EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, ITS CAPACITY, ITS OPERATION, ITS PERFORMANCE, ITS DESIGN, ITS MATERIALS, ITS WORKMANSHIP AND/OR ITS QUALITY.** No representation or warranty as to the Vehicle(s) and/or Equipment or any other matter by the Vehicle(s) and/or Equipment seller shall be binding on Creditor nor shall the breach of such relieve Obligor of, or in any way affect, any of Obligor's Obligations to Creditor or Creditor's assignee as set forth herein. Obligor agrees to look solely to the manufacturer for any claim arising from any defect, breach of warranty, failure or delay in delivery, misdelivery, or inability to use the Vehicle(s) and/or Equipment for any reason whatsoever and Obligor's obligations to Creditor hereunder shall not in any manner be affected thereby, including (without limitations) Obligor's obligations to pay Creditor all periodic installments and other amounts payable under this Agreement.

**F. Consequential Damages.** Creditor and Creditor's assignee shall not be liable to Obligor or any third party for any loss, damage, injury or expense of any kind or nature caused directly or indirectly by the Vehicle(s) and/or Equipment or the use or maintenance thereof or any defect therein, the failure or operation thereof, or any repair, service or adjustment thereto, or by any delay or failure to provide any thereof or by any interruption or service or loss of use thereof or for any loss of business or damage whatsoever and howsoever caused, including (without limitation) any loss of anticipatory profits or any other indirect, special or consequential damages.

**G. Tax Treatment.** Creditor makes no warranty as to the treatment of this Agreement for tax or accounting purposes, or as to the compliance of the Vehicle(s) and/or Equipment with applicable government regulations or requirements, which shall be the sole responsibility of the Vehicle(s) and/or Equipment seller and/or manufacturer of the Vehicle(s) and/or Equipment.

**H. Credit Application and Obligor's Financial Information.** Obligor warrants that the application, statements and credit or financial information submitted by it to Creditor are true and correct and made to induce Creditor to enter into this Agreement and to finance Obligor's purchase of the Vehicle(s)

and/or Equipment. Obligor agrees to provide to Creditor audited annual financial statements and such other interim financial statements as Creditor may request.

**I. Authorization; Conflicts.** Obligor warrants (a) that this Agreement has been duly authorized, executed and delivered by Obligor, and constitutes the legal, valid and binding obligation of Obligor, enforceable in accordance with its terms, and (b) that no provision of this Agreement (i) is inconsistent with Obligor's charter, by-laws, or any loan or credit agreement or other instrument to which Obligor is a party or by which Obligor or its property may be bound or affected or (ii) conflicts with any applicable law, rule or regulation, and (c) that no claim, action or suit is pending or has been threatened that would adversely affect Obligor's ability to enter into or perform its obligations under this Agreement.

**J. Location and Operation.** Obligor shall keep the Vehicle(s) and/or Equipment within the United States at the above-stated "Location of Vehicle(s) and/or Equipment" or, if none is specified, at Obligor's above-stated address within the United States, and Obligor shall not remove any of the Vehicle(s) and/or Equipment therefrom for more than thirty (30) days without Creditor's prior written consent. Obligor shall use the Vehicle(s) and/or Equipment in a careful manner and shall at all times, at its sole expense, keep the Vehicle(s) and/or Equipment in good operating condition, repair and appearance and comply with all laws, ordinances, regulations or requirements of any governmental authority, official, board or department relating to its installation, possession, use or maintenance. Obligor shall not make any alterations, additions, or improvements to the Vehicle(s) and/or Equipment which are not readily removable without causing damage to or reducing the value of the Vehicle(s) and/or Equipment.

**K. Assignment. OBLIGOR SHALL NOT ASSIGN, PLEDGE, MORTGAGE OR OTHERWISE TRANSFER OR ENCUMBER ANY OF ITS RIGHTS UNDER THIS AGREEMENT OR IN THE VEHICLE(S) AND/OR EQUIPMENT OR ANY PART THEREOF, NOR SUBLET ANY PART THEREOF, NOR PERMIT ITS USE BY ANYONE OTHER THAN OBLIGOR AND ITS REGULAR EMPLOYEES, WITHOUT CREDITOR'S PRIOR WRITTEN CONSENT. ANY SUCH PURPORTED TRANSFER, ASSIGNMENT OR OTHER ACTION WITHOUT CREDITOR'S WRITTEN CONSENT SHALL BE VOID.**

Creditor may, without notice, transfer or assign this Agreement or any interest herein and may mortgage, pledge, encumber or transfer any of its right or interest in and to this Agreement and/or the Vehicle(s) and/or Equipment or any part thereof and, without limitation, each assignee, transferee and mortgagee shall have the right to further transfer or assign its interest. Each such assignee, transferee, mortgagee and pledgee shall have all of the rights (but none of the obligations) of Creditor under this Agreement, and Obligor hereby acknowledges notice of Creditor's intended assignment of Creditor's interest in this Agreement and, upon such assignment, Obligor agrees not to assert against any of such transferee, assignee, mortgagee or pledgee any defense, claim, counterclaim or set-off that Obligor may have against Creditor, whether arising under this Agreement, transaction or otherwise. Any assignee of Creditor's rights under this Agreement shall be considered a third party beneficiary of all of Obligor's representations, warranties and obligations hereunder to Creditor. Obligor agrees that after receipt by Obligor of written notice of an assignment from Creditor or from Creditor's assignee, all periodic installments and other amounts which are then and thereafter due under this Agreement shall be paid unconditionally to such assignee at the place of payment designated in such notice. Obligor acknowledges that any assignment of Creditor's interest would neither materially change the Obligor's obligations hereunder nor materially increase the burden or risk imposed on the Obligor under this Agreement. Obligor further acknowledges that an assignment by the Creditor of its interest hereunder will be permitted even if the assignment would be deemed to materially affect the Obligor's interest.

**L. License and Registration Fees.** Obligor agrees to title and register the Vehicle(s) and/or Equipment with the appropriate Department of Motor Vehicles within 30 days of the date of this Agreement listing Creditor as first lienholder and having said title and/or proof of lien forwarded to Creditor. **FAILURE**

**TO PROVIDE SATISFACTORY PROOF OF TITLE AND REGISTRATION SHALL CONSTITUTE AN EVENT OF DEFAULT AND MAY RESULT IN THE REPOSSESSION OF THE COLLATERAL BY CREDITOR AND THE IMPOSITION OF PENALTIES AND FEES AT A RATE OF $25.00 PER DAY.**

M. **Performance.** Obligor covenants and agrees at all times to keep the Vehicle(s) and/or Equipment free and clear of all levies, liens and encumbrances, and to pay all charges, taxes and fees that may now or hereafter be imposed upon the ownership, sale, purchase, possession or use of the Vehicle(s) and/or Equipment (except taxes on or measured by Creditor's income) and shall give Creditor immediate written notice of any of the foregoing and hereby indemnifies Creditor against any loss caused thereby. If Obligor shall fail to duly and promptly perform any of its obligations under this Agreement with respect to the Vehicle(s) and/or Equipment, Creditor may, at its option, but without the duty to do so, perform any act or make any payment, which Creditor deems necessary for the maintenance and preservation of the Vehicle(s) and/or Equipment and Creditor's title thereto, including payments for satisfaction of liens, repairs, taxes, fines, levies and insurance. All sums so paid or incurred by Creditor, together with interest thereon at 12 percent per annum, and all reasonable legal fees incurred by Creditor in connection therewith, shall be additional rent under this Agreement and payable by Obligor to Creditor on demand. The performance of any act or payment by Creditor as aforesaid shall not be deemed a waiver or release of any obligation or default on the part of Obligor, all of Creditor's remedies being cumulative.

N. **Irrevocable Nature of Agreement; Limited Prepayment Right. THIS AGREEMENT IS IRREVOCABLE AND MAY NOT BE CANCELED, TERMINATED OR REVOKED BY OBLIGOR DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER.** Obligor agrees that this Agreement is irrevocable for the Term, that Obligor's obligations under this Agreement are absolute and unconditional and shall continue without abatement and regardless of any disability of Obligor to use the Vehicle(s) and/or Equipment or any part thereof because of any reason including, but not limited to war, act of God, governmental regulations, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Vehicle(s) and/or Equipment to operate properly, termination by operation of law or any other cause. Obligor further agrees that it shall have no right to prepay its obligations hereunder, in whole or in part, and hereby unconditionally waives any right of prepayment it may have under applicable law except that Obligor shall have a right to prepayment if no event of default under this Agreement or any other agreement between Obligor and Creditor or its affiliates has occurred and at least 12 monthly payments have been made as scheduled and Obligor has paid all outstanding amounts and has paid an additional Prepayment Penalty calculated as follows:

| Payment Penalty Rate | | | | |
|---|---|---|---|---|
| Months Paid | Article 1B Term | | | |
| | 84 months + | 72-83 months | 60-71 months | 48-59 months | Up to 47 months |
| 12-24 | 5% | 5% | 5% | 5% | 5% |
| 25-36 | 4% | 4% | 3% | 3% | 3% |
| 37-48 | 3% | 3% | 2% | 1% | |
| 49-60 | 2% | 2% | 1% | | |
| 61-72 | 1% | | | | |

Prepayment Penalty = Unpaid amount of the Advance multiplied by the Prepayment Penalty Rate.

O. **Power of Attorney.** Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to execute, apply, amend, file, or take any reasonably necessary action to confirm or perfect Creditor's security interest in the Vehicle(s) and/or Equipment.

P. **Agreement to Replace Lost or Misplaced Documents and to Correct Misstated or Inaccurate Documents.** Regardless of the reason for any loss, misplacement, or inaccuracy in any document evidencing and/or securing this Agreement, Obligor agrees to execute and/or initial and deliver any and

all "Replacement Documents" as defined in this paragraph. Obligor agrees to deliver to Creditor any documents Creditor deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). The documents Creditor requests Obligor to execute and/or initial and deliver pursuant to this paragraph shall hereinafter be referred to as "Replacement Documents". Obligor agrees to deliver the "Replacement Documents" within 10 (ten) days after receipt by Obligor of a written request from Obligor for them.

Q. **Continuing Right to Obtain Credit Reports.** Obligor agrees that Creditor may obtain Obligor's credit report, credit score or other consumer report for connection with continuation of the extension of credit described in this Agreement, collection of amounts owed under this Agreement and enforcement of this Agreement.

## ARTICLE 3 – INSURANCE

A. **Physical Damage and Liability Insurance.** Obligor shall, at its expense, keep the Vehicle(s) and/or Equipment fully insured in favor of Creditor against loss, fire, theft, damage or destruction from any cause whatsoever in an amount not less than the full replacement cost of the Vehicle(s) and/or Equipment without consideration for depreciation. Obligor shall also provide such additional insurance against injury, loss or damage to persons or property arising out of the use or operation of the Vehicle(s) and/or Equipment as is customarily maintained by the owners of like property, with companies satisfactory to Creditor. Each policy shall provide that, as to the interest or coverage of Creditor or Creditor's assignee, the insurance afforded thereby shall not be suspended, forfeited, or in any manner prejudiced by any default or by any breach of warranty condition, or covenant on the part of Obligor. Creditor, at its option, may apply any proceeds of such insurance to replace or repair such Vehicle(s) and/or Equipment and/or to Obligor's obligations hereunder. Obligor also shall carry public liability insurance, both personal injury and property damage covering the Vehicle(s) and/or Equipment. All such insurance shall be in form, issued by such insurance companies and be in such amounts as shall be satisfactory to Creditor, and shall provide that losses, if any, shall be payable to Creditor and Creditor's assignee as "loss payee", and all such liability insurance shall include Creditor and Creditor's assignee as an "additional insured." Obligor shall pay the premiums for such insurance and deliver to Creditor satisfactory evidence of the insurance coverage required hereunder. Each insurer shall agree, by endorsement upon the policy or policies issued by it or by independent instrument furnished to Creditor, that it will give Creditor at least ten (10) days prior written notice of the effective date of any alternation or cancellation of such policy, and that Creditor's coverage under such policy shall not be affected by any default, misrepresentation or other breach by Creditor or Obligor under this Agreement or such policy.

B. **Attorney-in-Fact.** Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to make claim for, receive payments of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. In any event, Obligor shall be liable for any loss, damage, expense or costs suffered or incurred by Creditor relating to or in any manner pertaining to this Agreement, the Vehicle(s) and/or Equipment or the use or operation of the Vehicle(s) and/or Equipment.

C. **Failure to Maintain Insurance.** In the event Obligor fails to procure and maintain the required insurance or provide evidence of such insurance, such failure shall be deemed to be a material default hereunder and the Vehicle(s) and/or Equipment shall be immediately returned to Creditor. Creditor, at its sole discretion, and in addition to any other remedy, may impose and collect liquidated damages of $150 per day for each day that Obligor has possession of the Vehicle(s) and/or Equipment and is without required insurance. In addition, and not as an alternative to such liquidated damages, Creditor may, at Creditor's option, purchase insurance (or place the Vehicle(s) and/or Equipment on an existing policy) at a cost to Obligor of $150 per day (until satisfactory evidence that Obligor has procured and currently

maintains the required insurance is provided to Creditor), to protect Creditor's interests. This insurance need not protect Obligor's interests. The coverage that Creditor purchases or maintains may not pay any claim by Obligor or any claim that is made against Obligor. Creditor has no obligation to purchase such insurance and Creditor's purchase does not forgive any default or otherwise modify the Obligor's obligations, including the obligation to maintain insurance.

**D. Indemnification and Hold Harmless.** In the event that Obligor for any reasons fails to procure and maintain required insurance, the Obligor agrees to defend, indemnify (that is, Obligor will pay Creditor) and hold Creditor (including its parent company, affiliates, subsidiaries, officers, directors and employees) harmless for any and all losses, damages, claims, injuries and expenses (including attorneys' fees, costs and disbursements) that arise from or relate to this Agreement, or from the Obligor's use or possession of the Vehicle(s) and/or Equipment. Obligor's agreement to indemnify Creditor and hold Creditor harmless will survive termination of this Agreement and repossession of the Vehicle(s) and/or Equipment. It is the intention of the parties to transfer all liability from Creditor to Obligor whether the liability is caused in whole or in part by Creditor, Obligor or both. Obligor's obligation to defend, indemnify and hold harmless Creditor, shall in no manner be construed to limit or relieve Obligor's obligation to provide the insurance coverage required herein.

## ARTICLE 4 – RISK OF LOSS

Obligor shall bear the entire risk of loss, theft, destruction of or damage to the Vehicle(s) and/or Equipment or any part thereof from any cause whatsoever during the term of this Agreement and shall not be relieved of its liabilities under <u>Article 1</u> hereof or any other obligation hereunder because of any such occurrence. In the event of damage to any item of the Vehicle(s) and/or Equipment, Obligor, at its sole expense and at the option of Creditor, shall immediately place the same in good condition and repair. If Creditor determines that any item of Vehicle(s) and/or Equipment is lost, stolen or destroyed or damaged beyond repair, Obligor, at its sole expense and at the option of Creditor shall pay Creditor in cash (in addition to any other amount due hereunder) the unpaid balance of the total periodic installments for the unexpired term hereof attributable to such Vehicle(s) and/or Equipment.

## ARTICLE 5 – DEFAULT

As used in this Agreement, the term "Event of Default" shall mean any one or more of the following:

(a) the failure by a Obligor to make any payment when due hereunder.

(b) the failure by a Obligor to observe or perform (i) any other agreement or obligation to be observed or performed hereunder or under any agreement, document or instrument delivered to Creditor by or on behalf of any Obligor or otherwise relating to any of the Indebtedness (collectively, the "Other Documents"), or (ii) any other obligation of a Obligor to Creditor;

(c) any representation or warranty made by or on behalf of any Obligor in this Agreement or in any of the Other Documents shall at any time prove to have been incorrect or untrue when made;

(d) the making by a Obligor of any misrepresentation to Creditor or the failure on the part of a Obligor to disclose to Creditor any material fact in connection with this Agreement or otherwise, either contemporaneously herewith or at any time prior or subsequent to the execution hereof;

(e) the breach by a Obligor of any warranty contained herein or in any of the Other Documents, including, without limitation, Obligor's failure to obtain or maintain any insurance required by Creditor hereunder;

(f) any default in the payment of any indebtedness owed to any individual or entity other than Creditor, or any default in the performance or observance of the terms of any agreement, document or instrument pursuant to which such indebtedness was created, secured or guaranteed, the effect of which default is to cause or permit the holder of any such indebtedness to cause the same to be due prior to its stated maturity (whether or not such default is waived by the holder thereof);

(g) the failure of a Obligor to pay, withhold, collect or remit when asserted or due any tax, assessment or other sum payable with respect to the Vehicle(s) and/or Equipment or any security for any of the Indebtedness (including, without limitation, any premium on any insurance policy with respect to any of the Vehicle(s) and/or Equipment or any security for any of the Indebtedness, or any insurance policy assigned to Creditor as security for any of the Indebtedness), or the making of any tax assessment against any Obligor by the United States or any state or local government;

(h) the entry of a judgment against a Obligor or any attachment, levy or execution against any property of a Obligor, or the condemnation or seizure of any part of any property of a Obligor by any governmental authority or court at the insistence of such governmental authority;

(i) the death of a Obligor, if an individual, or the death of any individual member of a Obligor, if a partnership or joint venture;

(j) the change in control, management, ownership or operations of a Obligor, or the suspension of the usual business of a Obligor, or the dissolution, liquidation or other termination of existence of a Obligor, or the adoption of any resolution for the dissolution, liquidation or other termination of existence of a Obligor, or the sale of material assets of an Obligor;

(k) the failure of a Obligor (or any admission in writing by a Obligor of its inability) to generally pay its debts as they become due or the insolvency or business failure of a Obligor;

(l) the filing of an application for appointment of trustee, custodian or receiver for a Obligor or of any part of a Obligor's property, or an assignment for the benefit of creditors by a Obligor, or the making or sending of notice of any intended bulk transfer by a Obligor;

(m) the filing of a petition in bankruptcy by or against a Obligor, or the commencement by or against a Obligor of any proceeding under any bankruptcy or insolvency law or statute, or any law or statute, relating to the relief of debtors or arrangement of debt, readjustment of indebtedness, reorganization, receivership or composition, or the extension of indebtedness; or

(n) such a change in the condition or affairs (financial or otherwise) of a Obligor as shall, in the sole opinion of Creditor increase Creditor's risk with respect to this Agreement, the Vehicle(s) and/or Equipment or any of the Indebtedness or any security therefor.

Upon the occurrence of an Event of Default, then, at Creditor's option, and at any time, the entire unpaid total periodic installments for the balance of the Term hereof plus all outstanding fees and assessments shall be at once due and payable and/or Creditor may, without demand or legal process, terminate this Agreement and enter upon the premises where the Vehicle(s) and/or Equipment is located, take possession of and remove same, and exercise any one or more of the following rights and remedies, without liability to Obligor therefor and without affecting Obligor's obligations hereunder: (i) sell, lease, or otherwise dispose of the Vehicle(s) and/or Equipment or any part thereof at one or more public or private sales, agreements or other dispositions, at wholesale or retail, for such consideration, on such terms, for cash or on credit, as Creditor many deem advisable, on at least ten (10) days' prior notice to Obligor of any public sale or of the time after which private sale, agreement or other disposition may be made (which notice Obligor acknowledges is reasonable); and/or (ii) retain the Vehicle(s) and/or Equipment or any part thereof, crediting Obligor with the then reasonable rental

value thereof for the balance of the Term of this Agreement, and/or (iii) require Obligor to assemble all Vehicle(s) and/or Equipment at Obligor's sole expense, for Creditor's benefit, at a place reasonably designated by Creditor, and/or (iv) pursue any other remedy granted by any existing or future document executed by Obligor or by law.

Obligor agrees to pay all Creditor's expenses, including (but not limited to) the costs of repossessing, storing, repairing and preparing Vehicle(s) and/or Equipment for sale or agreement, commissions payable in connection with any such sale or agreement, and reasonable attorney's fees if an attorney shall be consulted. The net proceeds realized from any such sale, agreement or other disposition or the exercise of any other remedy, and after payment of all expenses (which amount shall be retained by Creditor), shall be applied toward payment of the discounted unpaid periodic installment payments hereunder through the end of the Term of the Agreement and any other amounts due hereunder, with Obligor to remain liable for any deficiency. Any amount due Creditor under this Article 5 shall be deemed liquidated damages for the breach hereof and not a penalty. All rights and remedies of Creditor shall be cumulative and not alternative and are in addition to any other remedies provided by law. Creditor's failure to exercise or delay in exercising any right or remedy shall not be construed as a waiver thereof, nor shall a waiver on one occasion be construed to bar the exercise of any right or remedy on a future occasion. In addition, to the extent permitted by applicable law, Obligor also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Creditor to sell, lease or otherwise use any Vehicle(s) and/or Equipment in mitigation of Creditor's damages or which may otherwise limit or modify any of Creditor's rights or remedies.

## ARTICLE 6 – SECURITY DEPOSIT

A "Security Deposit" of $0.00 or any amount stated in an Exhibit A executed after the date of this Agreement shall be paid by Obligor prior to Creditor's acceptance of this Agreement. In the event the Term of this Agreement does not commence for any reason whatsoever, the Security Deposit shall be retained by Creditor not as a penalty but as liquidated damages to cover Creditor's administrative expenses in processing the application for this Agreement. Otherwise, the Security Deposit will be applied to the first and last scheduled payments under this Agreement at the time such payments are due.

## ARTICLE 7 – LIQUIDATED DAMAGES

Whenever any periodic installment or other amount payable to Creditor by Obligor hereunder is not paid within ten (10) days of such payment's due date, Obligor agrees to pay Creditor, on demand, as liquidated damages and not as a penalty; (a) with respect to payments, an administrative fee equal to six cents ($.06) for each one dollar ($1.00) of such delayed periodic payment, or the maximum amount permitted under applicable law, whichever is less, and (b) with respect to periodic payments overdue for more than thirty (30) days and all other amounts payable to Creditor by Obligor hereunder (including accelerated amounts due if Obligor is in default), a late charge calculated at the rate of 18% per annum on such overdue amount, or the maximum amount permitted under applicable law, whichever, is less, from the date such payment is due until the date such payment is made in full to Creditor. Such amount(s) shall be payable in addition to all amounts payable by Obligor as a result of exercise of any of the remedies herein provided. Obligor agrees to also reimburse Creditor for any expenses (including Creditor's attorneys' fees and costs) arising out of or caused by enforcement of this Agreement.

## ARTICLE 8 – TERMINATION AND FURTHER ASSURANCES

Obligor agrees that upon expiration of this Agreement it shall pay promptly all costs, expenses and obligations of every kind and nature relating to the Vehicle(s) and/or Equipment which may arise or become due during the Term of this Agreement, whether or not specifically mentioned herein. No periodic installment or other sums payable by Obligor pursuant to this Agreement shall be subject to set-off, deduction, counterclaim, abatement, recoupment, or reduction, nor shall this Agreement terminate, nor shall Obligor be entitled to any credit against

such periodic installment or other sums for any reason whatsoever, including, but not in any way limited to, any damage to or destruction of the Vehicle(s) and/or Equipment or any item thereof, any limitation, restriction, deprivation or prevention of, or any interference with Obligor's use of the Vehicle(s) and/or Equipment or any item thereof, whether the sale shall be lawful or unlawful, any dispossession of Obligor from the Vehicle(s) and/or Equipment or any item thereof by title paramount or otherwise, the requisition or taking by statute or by exercise of the power of eminent domain or other governmental authority or otherwise, or by injunction or by any private person, of the Vehicle(s) and/or Equipment or any item thereof, the prohibition of Obligor's business in whole or in part, whether pursuant to law or otherwise or any reason whether similar or dissimilar to the foregoing.

## ARTICLE 9 – CREDITOR'S SET OFF, CROSS COLLATERAL, CROSS DEFAULT

In the event that the parties hereto have entered into any separate agreement(s), note(s), or lease(s) whereby Obligor has any financial obligation to Creditor, or any of Creditor's affiliated companies, Creditor retains the right of set off for any monies due and owing Creditor by Obligor on account of this Agreement with respect to any other separate agreements, notes or leases, including any advance payments made or security deposits made by Obligor and held by Creditor. All payments made by Obligor shall be applied to the oldest debt first, whether on account of this Agreement or any other indebtedness, including parts, shop or repair invoices owed by Obligor to Creditor or to any related or affiliated companies. In order to induce Creditor to make the Advance described in this Agreement, Obligor agrees that all property covered or acquired by Obligor or Obligor's assignor under presently existing or hereinafter created separate agreements, note(s), or lease(s) between Creditor and Obligor or Obligor's assignor or with funds provided by Creditor to or on behalf of Obligor or Obligor's assignor ("Additional Collateral") shall secure the payment and performance of all of Obligor's liabilities and obligations to Creditor of every kind and character, whether joint or several, direct or indirect, absolute or contingent, due or to become due, and whether under presently existing or hereafter created agreement(s), note(s) or lease(s), including, but not limited to, obligations under this Agreement. Obligor grants Creditor a security interest in all Collateral and Additional Collateral and such security interest shall not be terminated in whole or in part until and unless all indebtedness of every kind, due or become due, owed to Creditor by Obligor is fully paid and satisfied and the terms of every agreement, note, and lease have been fully performed by Obligor. It is further agreed that Creditor is to retain Creditor's security interest in all property covered by all agreement(s), note(s), and lease(s) held or acquired by Creditor, as security for payment and performance under each such agreement, note, and lease, notwithstanding the fact that one or more of such agreement(s), note(s), or lease(s) may become fully paid.

An Event of Default under this Agreement shall constitute a default under any other such separate agreement(s), note(s) or lease(s) whereunder Obligor has a financial obligation to Creditor, or any of its affiliated companies.

## ARTICLE 10 – INDEMNITY

Obligor shall and does hereby indemnify and save Creditor, its directors, officers, employees, agents, servants, successors and assigns, harmless from any and all liabilities (including, without limitation, negligence, tort and strict liability), damages, expenses, claims, actions, proceedings, judgments, settlements, losses, liens and obligations (each, an "Indemnified Claim"), including (without limitation) counsel fees and costs, arising out of the ordering, purchase, delivery, rejection, non-delivery, ownership, selection, possession, financing, operation (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Obligor), maintenance, delivery, transportation, storage, repair, return or other disposition of the Vehicle(s) and/or Equipment, any claims arising under federal, state or local environmental protection and hazardous substance clean up laws and regulations and any claims of patent, trademark or copyright infringement or, in the event that Obligor shall be in default hereunder, arising out of the condition of any item of Vehicle(s) and/or Equipment sold or disposed of after use by Obligor, including (without limitation) claims for injury to or death of persons and for damage to property. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the expiration, termination or

cancellation of this Agreement for any reason whatsoever and irrespective of whether Creditor ever accepts this Agreement. Obligor shall give Creditor prompt written notice of any Indemnified Claim and, at Creditor's sole option, shall defend Creditor against any Indemnified Claim at Obligor's sole expense with counsel selected by Creditor. Obligor is an independent contractor and nothing contained herein shall authorize Obligor or any other person to operate any item of Vehicle(s) and/or Equipment so as to incur any liability or obligation for or on behalf of Creditor.

## ARTICLE 11 – GENERAL

A. **Beneficiaries.** The Creditor and Obligor agree that this Agreement shall inure to the benefit of, and be binding upon the parties hereto, their successors, assigns, transferees and their heirs, executors, administrators and legal representatives.

B. **Change in Legal Ownership.** Obligor agrees to provide written notice to Creditor of any change in its ownership structure and to provide copies of any and all documents evidencing such change thirty (30) days prior to the effectiveness of such change. Creditor reserves the right to terminate the Agreement and take possession of the Vehicle(s) and/or Equipment upon a change in the ownership structure of Obligor which is not acceptable to Creditor.

C. **Entire Agreement.** Except as provided in an Exhibit attached pursuant to Article 1, this Agreement constitutes the entire agreement between the parties, and cannot be amended or altered in any manner except in writing signed by both parties. No oral modifications shall be permitted or recognized.

D. **Notice.** Any notice to a party hereunder shall be deemed given when mailed to said party by certified mail, return receipt requested at its address set forth herein or such other address as either may designate for itself in such notice to the other. Whenever the sense of this Agreement requires, words in the singular shall be deemed to include the plural and words in the plural shall be deemed to include the singular. If more than one Obligor is named herein the liability of each shall be joint and several. This Agreement (along with any separate promissory note or instrument executed by Obligor relating to this Agreement) constitutes the entire mutual understanding of the parties regarding the within subject matter and may not be modified except in writing, signed by the party against whom such modification is asserted. Upon the request of Creditor, Obligor shall at any time and from time to time after the execution and delivery of the Agreement, execute and deliver such further documents and do such further acts as Creditor may reasonably request in order fully to effect the purposes of this Agreement, and any assignment hereof. Obligor hereby authorizes Creditor, at its option and as contemplated by Section 9-509 of the UCC or otherwise, to file financing statements covering the Vehicle(s) and/or Equipment signed only by Creditor on a reproduction of this Agreement, and agrees to pay Creditor the actual fee for such filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. IN THE EVENT THE INTEREST RATE CHARGED UNDER THIS AGREEMENT EXCEEDS THE MAXIMUM RATE OF INTEREST ALLOWED BY APPLICABLE LAW, THEN THE EFFECTIVE RATE OF INTEREST HEREUNDER SHALL BE AUTOMATICALLY REDUCED TO THE MAXIMUM LAWFUL RATE ALLOWABLE UNDER THE APPLICABLE USURY LAWS.

E. **Waiver.** No agent or employee of the seller of the Vehicle(s) and/or Equipment is authorized to bind Creditor to this Agreement, to alter or waive any term or condition hereof, or to add any provision hereto, notwithstanding any compensation or benefit that may be given by Creditor to seller or any agent or employee of seller.

F. **Captions.** Captions, headings and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify, or modify the terms and provisions hereof.

G. **GPS:** Obligor agrees to allow Creditor to equip the Vehicle(s) and/or Equipment with a Global

Positioning System ("GPS") unit or other location tracking system that will allow the Vehicle(s) and/or Equipment to be monitored by Creditor. Obligor is hereby notified of the tracking device and the tracking. Any tampering with the GPS unit or other location tracking system will cause a default under the Agreement.

**H. Construction; Jurisdiction; Waiver of Jury Trial.** The substantive laws of the State of New York shall govern the validity, construction, enforcement, and interpretation of this Agreement. Obligor hereby consents to the personal jurisdiction of the state and federal courts located in the State of New York in connection with any controversy relating to this Agreement, waives any argument that venue in such forums is not convenient and agrees that any litigation instigated by the Obligor against the Creditor in connection herewith shall be venued in either the New York State Court in Nassau County, New York or the United States District Court for the Southern District of New York. THE OBLIGOR AND CREDITOR EACH WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT, THE OTHER DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. THE OBLIGOR AND CREDITOR EACH AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR THE OTHER DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT AND THE OTHER DOCUMENTS.

**IN WITNESS WHEREOF,** the names of Advantage Funding Commercial Capital Corp., and **RP Quality, Inc.** have been hereunto subscribed by the respective persons or officers thereunto duly authorized.

**Advantage Funding Commercial Capital Corp.**

By: _____
    Milton Wilcher, Funding Manager

Its: _____

DATE: _March  22_, 2018

**RP Quality, Inc.**

Obligor's Name _____

By:  X̅  _____
Printed Name: Renata Jasinska
Its: President
Address: 595 Alcoa Ln
         Hoffman Estates, IL 60169-1603

STATE OF ILLINOIS

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1HTMMMML7FH690019 | 2015 | INTERNATIONAL | 4000 SERIES 4300 | TRACTR TK | 18120642355 |
| 1HTMMMML7FH690019 | | | | | |

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 04/30/18 | 0631 | | | 03/20/18 USED | ORIGINAL |

MAILING ADDRESS

ADVANTAGE FUNDING COMM CAP CORP
3 DAKOTA DR STE 210
NEW HYDE PARK NY 11042-1167

LEGEND(S)

MILEAGE NOT REQUIRED

OWNER(S) NAME AND ADDRESS
RP QUALITY INC
595 ALCOA LN
HOFFMAN ESTATES IL 60169

FIRST LIENHOLDER NAME AND ADDRESS
ADVANTAGE FUNDING COMM CAP CORP
3 DAKOTA DR STE 210
NEW HYDE PARK NY 11042-1167

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

| Firm Name | By | Signature of Authorized Agent | Date |
|---|---|---|---|
| Firm Name | By | Signature of Authorized Agent | Date |

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ NO (TENTHS)
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING—ODOMETER DISCREPANCY

*If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application.*

ODOMETER READING
Signature(s) of Seller(s)

Printed Name(s) of Seller(s)
I am aware of the above odometer certification made by seller.

DATE OF SALE _____

Signature(s) of Buyer(s)

Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any. IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.
Q2104964

*Jesse White*
JESSE WHITE, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

DO NOT DETACH UNTIL SOLD
MUST BE COMPLETED BY SELLER
NOTICE OF SALE
SEE INSTRUCTIONS ON REVERSE

| INTERNATIONAL | 2015 | | 1HTMMMML7FH690019 | |
|---|---|---|---|---|
| Vehicle Make | Vehicle Year | | Vehicle Identification Number (VIN) | Date |

Name of Seller (Current Registered Owner) _____     Name of Buyer _____

Complete Address of Seller _____     Complete Address of Buyer _____

City _____ State _____ ZIP _____     City _____

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

EXHIBIT
2

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS
ODOMETER READING _____
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING – ODOMETER DISCREPANCY.

Date of Sale _____ Dealer No. _____

Dealer's Name _____

Agent's Signature _____ Printed Name (same as signature) _____
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____ Printed Name (same as signature) _____

**SECOND REASSIGNMENT DEALER ONLY**

(same fields repeated)

**THIRD REASSIGNMENT DEALER ONLY**

(same fields repeated)

**FOURTH REASSIGNMENT DEALER ONLY**

(same fields repeated)

**LAST REASSIGNMENT DEALER ONLY**

(same fields repeated)

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

VSD 403

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form does not satisfy the transfer of ownership requirements as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.



# Advantage Funding
### Transportation Financing & Leasing Specialists



**EXHIBIT**

3

### CONTINUING GUARANTY

**THIS GUARANTY** ("Guaranty") is made and entered into as of _March 14_, 2018 by the parties hereto executing this Guaranty as "Guarantor" (each such party is hereinafter referred to as "Guarantor") in favor of **ADVANTAGE FUNDING COMMERCIAL CAPITAL CORP.., 3 Dakota Drive, Ste.210 Lake Success, NY 11042** (hereinafter referred to as "Advantage"), guaranteeing the Indebtedness (as hereinafter defined) of **RP Quality, Inc,** (hereinafter referred to as "Obligor"). FOR VALUE RECEIVED, and/or as an inducement to Advantage to now or hereafter enter into, purchase or otherwise acquire the agreements, accounts and/or other obligations evidencing and/or securing Obligor's Indebtedness, each such Guarantor agrees as follows:

**SECTION 1.  Guaranty of the Obligations.** Guarantor hereby absolutely, irrevocably and unconditionally guarantees the full, prompt and punctual payment, performance and satisfaction when due (whether at maturity, by acceleration or otherwise) of all of Obligor's present and future indebtedness and obligations to Advantage, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or un-matured, and whether originally contracted with or otherwise acquired by Advantage, including, without limitation, principal, interest, late charges, and all liabilities, losses, costs, indemnification obligations, and attorneys' fees, and all expenses, that Advantage may suffer due to either Obligor's or Guarantor's default (all of which liabilities, obligations and Indebtedness are herein individually and collectively called the "Indebtedness"), which Indebtedness shall be conclusively presumed to have been created in reliance upon this Guaranty.

**SECTION 2.  Joint, Several and Solidary Liability.** Guarantor further agrees that its obligation for the prompt and punctual payment, performance and satisfaction of Obligor's Indebtedness are independent of any agreement or transaction with any other third parties and shall be on a "joint and several" and "solidary" basis along with Obligor to the same degree and extent as if Guarantor had been and/or will be a co-borrower, co-principal obligor and/or co-maker of Obligor's Indebtedness.  In the event that there is more than one Guarantor under this Guaranty, or in the event that there are other guarantors, endorsers, sureties or any other party who may at any time become liable for all or any portion of Obligor's Indebtedness (each, an "Other Obligor"), each Guarantor's obligations and liabilities hereunder shall be on a "joint and several" and "solidary" basis along with such Other Obligors.

**SECTION 3.  Duration; Cancellation of Guaranty.** This Guaranty and Guarantor's obligations and liabilities hereunder shall remain in full force and effect until such time as Obligor's Indebtedness shall be fully and finally paid, performed and/or satisfied, until such time as this Guaranty may be cancelled by Advantage under a written cancellation instrument in favor of Guarantor or otherwise as stated herein.

**SECTION 4.  Default by Obligor.** Immediately upon Obligor's default under any of its Indebtedness in favor of Advantage, Advantage may make demand upon Guarantor and Guarantor unconditionally and absolutely agrees to pay the full then unpaid amount of all of Obligor's Indebtedness (whether at stated maturity, by required prepayment, declaration, acceleration or otherwise) and/or perform any covenant or agreement hereunder guaranteed.  Such payment or payments shall be made immediately following demand by Advantage at Advantage's offices indicated above.

**SECTION 5.  Additional Covenants.** Guarantor further agrees that Advantage may, at its sole option, at any time, and from time to time, without the consent of or notice to Guarantor, and without incurring any responsibility to Guarantor, and without affecting, impairing or releasing the obligations of Guarantor under this Guaranty:  (a) discharge or release any party (including, but not limited to, Obligor, secondary obligors of Obligor's indebtedness or any co-guarantor under this Guaranty) who is or may be liable to Advantage for Obligor's Indebtedness;  (b) sell at public or private sale, exchange, release, impair, surrender, substitute, realize upon or otherwise deal with, in any manner and in any order and upon such terms and conditions as Advantage deems best at its uncontrolled discretion, any equipment and/or any collateral now or hereafter directly or indirectly securing repayment of Obligor's Indebtedness (all such equipment and/or all such collateral shall hereinafter be referred to as the "Equipment"), including without limitation, the purchase of all or any part of such collateral for Advantage's own account; (c) change the manner, place or terms of payment and/or available credit (including without limitation increase or decrease in the amount of such payments, available credit or any interest rate adjustments), or change or extend the time of payment of or renew, as often and for such periods as Advantage may determine, or alter Obligor's Indebtedness or grant any other indulgence to Obligor and/or any secondary obligors of Obligor's Indebtedness or any co-guarantor under this Guaranty; (d) settle or compromise Obligor's Indebtedness with Obligor and/or any third party or refuse any offer of performance with respect to, or substitutions for, the Indebtedness; (e) take or accept any other security or guaranty for any or all of Obligor's Indebtedness; and/or (f) enter into, deliver, modify, amend or waive compliance with, any instrument, agreement or arrangement evidencing, securing or otherwise affecting, all or any part of Obligor's Indebtedness.

**SECTION 6.  No Release of Guarantor.** Guarantor's obligations and liabilities under this Guaranty shall not be released, impaired, reduced or otherwise affected by, and shall continue in full force and effect, notwithstanding the occurrence of any event, including without limitation any one or more of the following events: (a) death, insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of authority (whether corporate, partnership or trust) of Obligor or any Other Obligor or any other defense based on or arising out of the lack of validity or unenforceability of the Indebtedness or any agreement or instrument relating thereto or any provisions thereof and/or Obligor's absence or cessation of liability thereunder for any reason, including without limitation, Advantage's failure to preserve any right or remedy against Obligor; (b) any change in Obligor's financial condition; (c) partial payment or payments of any amount due and/or outstanding under Obligor's Indebtedness; (d) any change in Obligor's management, ownership, identity or business or organizational structure; (e) any payment by Obligor or any other party to Advantage that is held to constitute a preferential transfer or a fraudulent conveyance under any applicable law, or for any reason, Advantage is required to fund such payment or pay such amount to Obligor or to any other person; (f) any sale, lease or transfer, whether or not commercially reasonable, of all or any part of Obligor's assets and/or any assignment, transfer or delegation of Obligor's Indebtedness to any third party (whereby this Guaranty shall continue to extend to all sums due from or for the account of Obligor and/or the new or substituted legal entity); (g) any failure to perfect any lien or security interest securing the Indebtedness or preserve any right, priority or remedy against any Equipment; (h) any interruption, change or cessation of relations between Guarantor and Obligor; (i) any defect in, damage to, destruction of or loss of or interference with possession

1

or use of any Equipment for any reason by Obligor or any other person; (j) any act or omission by Advantage which increases the scope of Guarantor's risk, including without limitation, negligent administration of transactions with Obligor; and/or (k) any other occurrence or circumstance whatsoever, whether similar or dissimilar to the foregoing, which might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or surety or which might otherwise limit recourse against Guarantor.

**SECTION 7. Waivers by Guarantor.** Guarantor waives, for the benefit of Advantage: (a) notice of the acceptance of this Guaranty; (b) notice of the existence, creation or incurrence of new and/or additional debt owing from Obligor to Advantage; (c) presentment, protest and demand, and notice of protest, demand, nonpayment, nonperformance and dishonor of any and all agreements, notes or other obligations signed, accepted, endorsed or assigned to or by Advantage or agreed to between Obligor and Advantage; (d) notice of adverse change in Obligor's financial condition or any other fact which might materially increase the risk of Guarantor; (e) any claim, right or remedy which Guarantor may now have or hereafter acquire against the Obligor that arises hereunder and/or from the performance by any Other Obligor including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Advantage against the Obligor or any security which Advantage now has or hereafter acquires with respect to the Obligor, whether or not such claim, right or remedy arises in equity, under contract (express or implied), by statute, under common law or otherwise; (f) notice of any default by Obligor or any other person obligated in any manner for all or any portion of Obligor's Indebtedness and notice of any legal proceedings against such parties; (g) any right of contribution from any Other Obligors; (h) notice and hearing as to any prejudgment remedies; (i) any defense which is premised on an alleged lack of consideration of the obligation undertaken by Guarantor, including without limitation, any defense to the enforcement of this Guaranty based upon the timing of execution of this Guaranty and/or that this Guaranty had been executed after the execution date of any agreements evidencing the Indebtedness; (j) all exemptions and homestead laws; (k) any other demands and notices required by law; (l) all setoffs and counterclaims against Advantage and/or Obligor; (m) any defense based on the claim that Guarantor's liabilities and obligations exceed or are more burdensome than those of Obligor; (n) any defense which the Obligor may assert or be able to assert on the underlying Indebtedness or which may be asserted by Guarantor, including but not limited to (i) breach of warranty, (ii) fraud, (iii) statute of frauds, (iv) infancy, (v) statute of limitations, (vi) lender liability, (vii) accord and satisfaction, (viii) payment and/or (ix) usury.

**SECTION 8. Enforcement of Guarantor's Obligations and Liabilities.** Guarantor agrees that Advantage may commence an action against Guarantor without the necessity of first (i) attempting to collect Obligor's Indebtedness from Obligor or from any Other Obligor, (ii) attempting to exercise any rights Advantage may have against any Equipment, (iii) including Obligor or any Other Obligor as an additional party defendant in such a collection action against Guarantor, or (iv) pursuing any other remedy in Advantage's power or to mitigate damages. If there is more than one guarantor under this Guaranty, each Guarantor additionally agrees that Advantage may file an applicable collection and/or enforcement action against any one or more of them, without impairing the rights of Advantage against any other guarantor under this Guaranty.

**SECTION 9. Successors and Assigns Bound.** Guarantor's obligations and liabilities under this Guaranty shall be binding upon Guarantor's successors, heirs, legatees, devisees, administrators, executors and assigns. Advantage may assign this Guaranty and any and all rights and interests included herein in Advantage's sole discretion without notice to Guarantor and the rights and remedies granted to Advantage under this Guaranty shall also inure to the benefit of Advantage's successors and assigns, without setoff, counterclaim, reduction, recoupment, abatement, deduction or defense based on any claim Guarantor may have against Advantage, such successors and assigns or subsequent holders of Obligor's Indebtedness. Guarantor shall not assign this Guaranty without the prior written consent of Advantage.

**SECTION 10. Governing Law; Waiver of Jury.** This Guaranty shall be construed liberally in favor of Advantage and shall be governed and construed in accordance with the substantive laws of the State of New York without regard to the conflicts of laws principles thereof. ANY ACTION, SUIT OR PROCEEDING RELATING DIRECTLY OR INDIRECTLY TO THIS GUARANTY OR THE RELATIONSHIP BETWEEN GUARANTOR AND ADVANTAGE, WILL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE WITHOUT A JURY. AS SUCH, GUARANTOR HEREBY WAIVES ANY RIGHT TO A JURY TRIAL IN ANY SUCH ACTION, SUIT OR PROCEEDING. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO TRIAL BY THE COURT.

**SECTION 11. Severability.** If any provision of this Guaranty is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable, this Guaranty shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

EACH GUARANTOR HAS READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS GUARANTY.

By: X _Renato Jasinska_
    Guarantor Signature

Name: Renata Jasinska

**NOTARY REQUIRED** *(if signing continuing guaranty for the first time)*

State of _Illinois_

County of _McHenry_

On the _19_ day of _March_, 2018 before me personally came _Renata D. Jasinska_, to me known to be the individual(s) described in and who executed the foregoing instrument and _she_ acknowledged that _She_ executed the same.

_____ (Notary Public)

```
"OFFICIAL SEAL"
SERENA S CARRERA
Notary Public - State of Illinois
My Commission Expires May 16, 2020
```

2



**Advantage Funding**
Transportation Financing & Leasing Specialists

3 Dakota Drive, Suite 210 - Lake Success, NY- 11042

### EXHIBIT A

▇▇▇1051

This Exhibit A is executed in connection with the Master Promissory Note and Security Agreement ("Agreement") with Account Number ▇▇▇▇0631 between Advantage Funding Commercial Capital Corp. and RP Quality, Inc.  a Illinois Corporation  and is a part of the Agreement. This Exhibit A incorporates by reference all the terms and conditions of this Agreement except as set forth in this Exhibit A. Obligations under this Exhibit A, the Agreement and any prior Exhibit A are cumulative and any future Exhibit A does not replace this Exhibit A or any prior Exhibit A or the Agreement.

PURCHASED VEHICLE(S)

| Year | Make | Model | VIN/Serial Number |
|------|------|-------|-------------------|
| 2017 | HINO | 268 Conventional Cab w/ 26' Aluminum US Truck Body S/N: 1603-04865-2 & Maxon Lift gate | 5PVNJ8JV0H4S63427 |

### ADDITIONAL PAYMENT TERMS

| | |
|---|---|
| Monthly Payment | 60 payments of $1,503.00 |
| Balloon Payment | One final payment of $0.00 — Due on: _____ |
| Term of Agreement | 60 |
| Remaining Term | 60 |
| Next Payment Due | And continuing on or before **1ST** of each month |
| | June 1, 2018 |
| Commencement Date | May 1, 2018 |
| Maturity Date | May 1, 2023 |
| Security Deposit | $0.00 |
| Acquisition Fee | $695.00 |

| Additional Advance Calculation | |
|---|---|
| Sale Price | $73,170.94 |
| Financed Sales Tax | $0.00 |
| Down Payment or Trade Value | $3,657.00 |
| Advance | $69,513.94 |

The parties have executed this Exhibit A as of **May 1, 2018**

| Advantage Funding Commercial Capital Corp. | RP Quality, Inc. |
|---|---|
| | Obligor's Name |
| By: _____ | By: X _Renata Jasinska_ |
| Milton Wilcher, Funding Manager | Printed Name:  Renata  Jasinska |
| Its: | Its:  President |
| | Address:  595 Alcoa Ln |
| | Hoffman Estates, IL  60169-1603 |

**EXHIBIT**

**4**

## STATE OF ILLINOIS

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 5PVNJ8JV0H4S63427 | 2017 | HINO | HINO 268 | TRACTR TK | 18141631021 |
| 5PVNJ8JV0H4S63427 | | | | | |

| DATE ISSUED | ODOMETER | GGM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 05/21/18 | | 1051 | | 04/16/18 USED | ORIGINAL |

LEGEND(S)

MAILING ADDRESS

MILEAGE NOT REQUIRED

ADVANTAGE FUNDING
3 DAKOTA DR STE 210
NEW HYDE PARK NY 11042-1167

OWNER(S) NAME AND ADDRESS
RP QUALITY INC
595 ALCOA LN
HOFFMAN ESTATES IL 60169

FIRST LIENHOLDER NAME AND ADDRESS
ADVANTAGE FUNDING
3 DAKOTA DR STE 210
NEW HYDE PARK NY 11042-1167

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described at this Certificate does hereby certify that the lien is released and discharged

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.

Secured Party _____ Address _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by Inc. I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application."

NO | TENTHS
ODOMETER READING
Signature(s) of Seller(s) _____

DATE OF SALE _____

Printed Name(s) of Seller(s)
I am aware of the above odometer certification made by seller.

Signature(s) of Buyer(s) _____  Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any.
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

Q2302804

Jesse White
JESSE WHITE, Secretary of State

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

---

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
NOTICE OF SALE

SEE INSTRUCTIONS ON REVERSE

| HINO | 2017 | 5PVNJ8JV0H4S63427 |
|---|---|---|
| Vehicle Make | Vehicle Year | Vehicle Identification Number (VIN) |

Name of Seller (Current Registered Owner) _____  Name of Buyer _____

Complete Address of Seller _____  Complete Address of Buyer _____

City _____ State _____ ZIP _____  City _____

Under penalties of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

**EXHIBIT**
5

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following person name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING

Date of Sale

Dealer No.

Dealer's Name

I am aware of the above odometer certification made by the seller/agent.

Agent's Signature

Printed Name (same as signature)

Signature of Buyer/Agent

Printed Name (same as signature)

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following person name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING

Date of Sale

Dealer No.

Dealer's Name

I am aware of the above odometer certification made by the seller/agent.

Agent's Signature

Printed Name (same as signature)

Signature of Buyer/Agent

Printed Name (same as signature)

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following person name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING

Date of Sale

Dealer No.

Dealer's Name

I am aware of the above odometer certification made by the seller/agent.

Agent's Signature

Printed Name (same as signature)

Signature of Buyer/Agent

Printed Name (same as signature)

## FOURTH REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following person name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING

Date of Sale

Dealer No.

Dealer's Name

I am aware of the above odometer certification made by the seller/agent.

Agent's Signature

Printed Name (same as signature)

Signature of Buyer/Agent

Printed Name (same as signature)

## LAST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following person name and address.

Name of Purchaser | Street | City | State | Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING

Date of Sale

Dealer No.

Dealer's Name

I am aware of the above odometer certification made by the seller/agent.

Agent's Signature

Printed Name (same as signature)

Signature of Buyer/Agent

Printed Name (same as signature)

VSD 40

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form does **not satisfy the transfer of ownership requirements** as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

DocuSign Envelope ID: 5FDCA311-8232-4157-BB7D-CD85629ED155

THIS IS A COPY
This is a copy view of the Authoritative Copy he
by the designated custodian



# Advantage Funding
**Transportation Financing & Leasing Specialists**

**3 Dakota Drive, Suite 210 - Lake Success, NY 11042**

## EXHIBIT A

████1529

This Exhibit A is executed in connection with the Master Promissory Note and Security Agreement ("Agreement") with Account Number████0631 between Advantage Funding Commercial Capital Corp. and RP Quality, Inc. a Illinois Corporation and is a part of the Agreement. This Exhibit A incorporates by reference all the terms and conditions of this Agreement except as set forth in this Exhibit A. Obligations under this Exhibit A, the Agreement and any prior Exhibit A are cumulative and any future Exhibit A does not replace this Exhibit A or any prior Exhibit A or the Agreement.

**PURCHASED VEHICLE(S)**

| Year | Make | Model | VIN/Serial Number |
|------|------|-------|-------------------|
| 2017 | INTERNATIONAL | DuraStar 4300 W/ Mickey Truck Bodies VB26097 26FT Box S/N:3366V15 | 1HTMMMML3HH450381 |

**ADDITIONAL PAYMENT TERMS**

| | |
|---|---|
| Monthly Payment | 60 payments of $1,633.00 |
| Balloon Payment | One final payment of $0.00  Due on: |
| Term of Agreement | 60 |
| Remaining Term | 60 |

And continuing on or before **17th** of each month

| | |
|---|---|
| Next Payment Due | 5/17/2018 |
| Commencement Date | 5/17/2018 |
| Maturity Date | 5/17/2023 |
| Security Deposit | $0.00 |
| Acquisition Fee | $695.00 |
| **Additional Advance Calculation** | |
| Sale Price | $81,496.26 |
| Financed Sales Tax | $0.00 |
| Down Payment or Trade Value | $6,000.00 |
| Advance | $75,496.26 |

The parties have executed this Exhibit A as of **5/17/2018**.

**Advantage Funding Commercial Capital Corp.**

By: *Milton Wilcher*

Name: Milton Wilcher

Title: Funding Manager

**RP Quality, Inc.**
Obligor's Name

By: *Renata Jasinska*

Printed Name: Renata Jasinska

Its: President

Address: 595 Alcoa Ln

Hoffman Estates, IL  60169-1603

**EXHIBIT 6**

# STATE OF ILLINOIS

## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1HTMMMML3HH430381 | 2017 | INTERNATIONAL | 4000 SERIES 4300 | TRACTR TK | 18171644056 |

1HTMMML3HH430381

| DATE ISSUED | ODOMETER | CCM | | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|---|
| 06/20/18 | | | 1529 | | 05/18/18 USED | ORIGINAL |

LEGEND(S)

MAILING ADDRESS

MILEAGE NOT REQUIRED

ADVANTAGE FUNDING COMM CAP CORP
3 DAKOTA DR STE 210
NEW HYDE PARK  NY  11042-1167

OWNER(S) NAME AND ADDRESS
R P QUALITY INC
595 ALCOA LN
HOFFMAN ESTATES  IL  60169

FIRST LIENHOLDER NAME AND ADDRESS
ADVANTAGE FUNDING COMM CAP CORP
3 DAKOTA DR STE 210
NEW HYDE PARK  NY  11042-1167

SECOND LIENHOLDER NAME AND ADDRESS

### RELEASE OF LIEN
The Lienholder on the vehicle described on this Certificate does hereby state that the lien is released and discharged.

| Firm Name | By | Signature of Authorized Agent | Date |
|---|---|---|---|
| Firm Name | By | Signature of Authorized Agent | Date |

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

► Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that this vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application."

Signature(s) of Seller(s)

Printed Name(s) of Seller(s)
I am aware of the above odometer certification made by seller.

DATE OF SALE

Signature(s) of Buyer(s)

Printed Name

I Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named herein is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any.
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD.

CONTROL NO.

Q2566024

*Jesse White*

JESSE WHITE, Secretary of State

## DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

---

MUST BE COMPLETED BY SELLER

DO NOT DETACH UNTIL SOLD
NOTICE OF SALE

SEE INSTRUCTIONS ON REVERSE

**EXHIBIT**

**7**

| INTERNATIONAL | 2017 | 1HTMMMNL3HH430381 |
|---|---|---|
| Vehicle Make | Vehicle Year | Vehicle Identification Number (VIN) |

Name of Seller (Current Registered Owner)

Name of Buyer

Complete Address of Seller

Complete Address of Buyer

| City | State | ZIP | City | State | ZIP |
|---|---|---|---|---|---|

Under penalty of perjury, I hereby certify that the foregoing is true and correct under the laws of the United States.

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING / NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING / NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING / NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**FOURTH REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING / NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**LAST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address.

Name of Purchaser     Street     City     State     Zip

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING / NO TENTHS
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale     Dealer No.

Dealer's Name

Agent's Signature     Printed Name (same as signature)
I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent     Printed Name (same as signature)

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

## NOTICE OF SALE INSTRUCTIONS

When a vehicle owner sells and/or releases interest in a vehicle that is titled in the State of Illinois, this form must be completed immediately and mailed to the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield IL 62756, to ensure that your responsibility for the vehicle is released.

Completion of this form does not satisfy the transfer of ownership requirements as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

This is a copy view of the Authoritative Copy
by the designated custodian



# Advantage Funding
### Transportation Financing & Leasing Specialists

3 Dakota Drive, Suite 210 Lake Success, NY 11042

Phone (718) 392-1300  Fax (718)-392-3933



**EXHIBIT**

8

## MASTER PROMISSORY NOTE AND SECURITY AGREEMENT

2497

**THIS MASTER PROMISSORY NOTE AND SECURITY AGREEMENT**, the "Agreement", entered into this August 20, 2018 by and between Advantage Funding Commercial Capital Corp., a New York corporation having its principal executive office at 3 Dakota Drive, Lake Success, NY 11042, or its assigns, hereinafter referred to as "Creditor" and QUO VADIS EXPRESS INC., a Illinois Corporation (State of Domicile and Type of Business Organization) having its principal office 600 Bonnie Ln Elk Grove Village IL 60007-1912 hereinafter referred to as "Obligor".

### ARTICLE 1 – PAYMENT AND SECURITY INTEREST

| Year | Make | Model | VIN/ Serial Number |
|------|------|-------|--------------------|
| 2015 | INTERNATIONAL | DuraStar 4300 w/ 26' Mickey Truck Bodies Box S/N 2000V15 | 1HTMMMMLXGH145353 |
| 2016 | INTERNATIONAL | DuraStar 4300 w/ 26' Marathon Box S/N 69521 | 3HAMMMML0GL112209 |

| A. PAYMENTS | B. TERM OF AGREEMENT | C. COMMENCEMENT DATE |
|---|---|---|
| 48 Monthly Payments of $3,436.00 and a Final Payment of $0.00 | 48 Months<br><br>48 Months Remaining | 8/22/2018 |

| D. MATURITY DATE | E. INITIAL PAYMENT | | F. ADVANCE | |
|---|---|---|---|---|
| 08/22/2022 | Initial Payment of: $695.00<br>Shall be applied to:<br>First Payment $0.00<br>Last Payment $0.00<br>Acquisition Fee $695.00 | | Sale Price: $133,441.88<br>Down Payment: $0.00<br>Sales Tax: $0.00<br>Advance: $133,441.88 | |

X _____RJ_____ Initials

**G. Promise to Pay.** Obligor promises to pay to the order of Creditor the principal sum of $133,441.88 ("Advance") with interest thereon prior to an Event of Default, as set forth herein. Obligor shall make the monthly payments stated in Article1A above or in any Exhibit A executed on or after the date of this Agreement, plus any final payment stated in Article 1A above or in any Exhibit A executed after the date of this Agreement, commencing on the Commencement Date stated in Article 1C above or, with respect to Vehicle(s) and/or Equipment described above or in any Exhibit A executed after the date of this Agreement, the date stated in that Exhibit A, and continuing on the same day of each month thereafter with no right of prepayment except that if at least 12 monthly payments have been made as scheduled (and not earlier or later than scheduled), and no event of default under this Agreement or any other agreement between Obligor and Creditor or its affiliates has occurred, Obligor may prepay if the additional prepayment penalty under Article 2N ("Prepayment Penalty") is first paid to Creditor. The final payment of all outstanding principal, together with all accrued but unpaid interest and all fees, cost,

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

expenses and other sums which may become due hereunder (collectively[This is a copy in lieu of the Authoritative Copy shall be held by the designated custodian] due and payable on the Maturity Date stated in <u>Article1D</u> or, if any Exhibit A is executed after the date of this Agreement, the date set forth in that Exhibit A with respect to payments for Vehicle(s) and/or Equipment described in that Exhibit A. Notwithstanding the foregoing, with the exception of the security deposit described below in <u>Article 6</u>, payments shall not commence until at least 30 days from the Commencement Date. Payment of all periodic installments and other amounts payable hereunder shall be made to Creditor at its above stated address, or as it shall otherwise designate in writing.

H. **Security Interest.** The Obligor hereby grants to Creditor a first priority security interest in the following collateral: (a) Vehicle(s) and/or Equipment described above or in the attached and any subsequent Exhibit A signed by the parties; (b) Equipment described above or in the attached and any subsequent Exhibit A signed by the parties (c) any additional collateral described above or in the attached or any subsequent Exhibit A signed by the parties, (d) all cash and non-cash proceeds and products of the foregoing Vehicle(s) and/or Equipment, and additional collateral, all proceeds of insurance thereon, all accessions thereto, all substitutions therefor and all additions thereto (said property, proceeds, products, substitutions, accessions and additions being herein called "Collateral"). Obligor confirms the Collateral will be used solely for commercial or business purposes (and not for consumer, personal, family or household purposes), as security for the repayment by Obligor to Creditor of the amounts specified in the Advance (and including any amounts specified in any attached or subsequent Exhibit A or promissory note which may be executed by Obligor specifically relating to this Agreement) and the performance by Obligor of all of its other obligations pursuant to the terms and conditions of this Agreement. Obligor grants a first priority purchase money security interest in any Collateral purchased with the Advance. The Advance will be used solely for commercial or business purposes and consumer protections will not apply to the transaction described in this Agreement.

I. **Term.** The Term of this Agreement shall be the number of months stated in <u>Article1B</u> above, commencing on the date stated in <u>Article1C</u> above. Obligor authorizes Creditor to insert such Commencement Date herein.

## ARTICLE 2- LOAN PROVISIONS

A. **Delivery of Vehicle(s) and/or Equipment.** Obligor shall accept the Vehicle(s) and/or Equipment upon its delivery and authorizes Creditor to insert herein the serial numbers and any additional description of the items of Vehicle(s) and/or Equipment so delivered. If Obligor wrongfully refuses delivery of any item of Vehicle(s) and/or Equipment for any reason whatsoever, then and in that event, Obligor agrees to indemnify and hold Creditor harmless from and against, and agrees to protect and (at Creditor's option) to defend Creditor at Obligor's sole expense against (with counsel acceptable to Creditor), any claim or liability and damage by Seller with reference to such item of Vehicle(s) and/or Equipment.

B. **Control of Vehicle(s) and/or Equipment.** The Vehicle(s) and/or Equipment shall be at all times under the sole and absolute control of Obligor, subject to the rights of Creditor as provided herein.

C. **Maintenance.** Obligor shall, at its own expense, keep and maintain the Vehicle(s) and/or Equipment in good operating condition and working order, and in compliance with all applicable regulations, including all repairs and maintenance, mechanical or otherwise occasioned by normal use, accident or casualty. In the event of accident or casualty loss, Obligor shall notify Creditor within 24 hours of such accident or casualty and disclose the extent of damage and proposed method of repair. Creditor may, at its option, in the event of an accident, require repairs according to manufacturer specifications facilities designated by Creditor. Further, Obligor shall perform all preventive maintenance required to insure full validation of any manufacturer's warranties, if applicable. Obligor shall maintain and make available all records required by applicable law. Obligor will comply with all manufacturer recall notices for Vehicle(s) and/or Equipment.

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

This is a copy view of the Authoritative Copy
by the designated custodian

**D. Inspection.** Creditor is hereby given the right, but not the duty, upon reasonable notice to Obligor and during its regular business hours, to inspect the Vehicle(s) and/or Equipment on the premises of Obligor, or wherever located. In the event that Creditor determines that Obligor is not maintaining the Vehicle(s) and/or Equipment in good operating condition, or does not make the Vehicle(s) and/or Equipment available for inspection, Creditor shall give Obligor written notice of its determination, and Obligor shall have fourteen (14) days to cure same. Failure to cure by Obligor shall be deemed an event of default hereunder. Any costs or expenses incurred by Creditor in connection with this paragraph shall be the obligation of the Obligor, payable within thirty (30) days of invoice. Any amounts due and owing hereunder shall constitute a part of this Agreement and be incorporated herein and shall be secured by the Vehicle(s) and/or Equipment purchased herein. Any default by Obligor in the payment thereof when due, shall entitle Creditor to utilize all available remedies for breach hereunder, including, but not be limited to, self-help recovery of possession. Obligor agrees to keep Creditor informed at all times of Obligor's principal place of business and the principal garage and location of the Vehicle(s) and/or Equipment.

**E. WARRANTIES. OBLIGOR REPRESENTS THAT IT HAS SELECTED THE VEHICLE(S) AND/OR EQUIPMENT AND OBLIGOR AGREES THAT CREDITOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, TITLE TO OR THE SUITABILITY OF THE VEHICLE(S) AND/OR EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, ITS CAPACITY, ITS OPERATION, ITS PERFORMANCE, ITS DESIGN, ITS MATERIALS, ITS WORKMANSHIP AND/OR ITS QUALITY.** No representation or warranty as to the Vehicle(s) and/or Equipment or any other matter by the Vehicle(s) and/or Equipment seller shall be binding on Creditor nor shall the breach of such relieve Obligor of, or in any way affect, any of Obligor's Obligations to Creditor or Creditor's assignee as set forth herein. Obligor agrees to look solely to the manufacturer for any claim arising from any defect, breach of warranty, failure or delay in delivery, misdelivery, or inability to use the Vehicle(s) and/or Equipment for any reason whatsoever and Obligor's obligations to Creditor hereunder shall not in any manner be affected thereby, including (without limitation) Obligor's obligations to pay Creditor all periodic installments and other amounts payable under this Agreement.

**F. Consequential Damages.** Creditor and Creditor's assignee shall not be liable to Obligor or any third party for any loss, damage, injury or expense of any kind or nature caused directly or indirectly by the Vehicle(s) and/or Equipment or the use or maintenance thereof or any defect therein, the failure or operation thereof, or any repair, service or adjustment thereto, or by any delay or failure to provide any thereof or by any interruption or service or loss of use thereof or for any loss of business or damage whatsoever and howsoever caused, including (without limitation) any loss of anticipatory profits or any other indirect, special or consequential damages.

**G. Tax Treatment.** Creditor makes no warranty as to the treatment of this Agreement for tax or accounting purposes, or as to the compliance of the Vehicle(s) and/or Equipment with applicable government regulations or requirements, which shall be the sole responsibility of the Vehicle(s) and/or Equipment seller and/or manufacturer of the Vehicle(s) and/or Equipment.

**H. Credit Application and Obligor's Financial Information.** Obligor warrants that the application, statements and credit or financial information submitted by it to Creditor are true and correct and made to induce Creditor to enter into this Agreement and to finance Obligor's purchase of the Vehicle(s) and/or Equipment. Obligor agrees to provide to Creditor audited annual financial statements and such other interim financial statements as Creditor may request.

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

This is a copy view of the Authoritative Copy
by the designated custodian

**I. Authorization; Conflicts.** Obligor warrants (a) that this Agreement has been duly authorized, executed and delivered by Obligor, and constitutes the legal, valid and binding obligation of Obligor, enforceable in accordance with its terms, and (b) that no provision of this Agreement (i) is inconsistent with Obligor's charter, by-laws, or any loan or credit agreement or other instrument to which Obligor is a party or by which Obligor or its property may be bound or affected or (ii) conflicts with any applicable law, rule or regulation, and (c) that no claim, action or suit is pending or has been threatened that would adversely affect Obligor's ability to enter into or perform its obligations under this Agreement.

**J. Location and Operation.** Obligor shall keep the Vehicle(s) and/or Equipment within the United States at the above-stated "Location of Vehicle(s) and/or Equipment" or, if none is specified, at Obligor's above-stated address within the United States, and Obligor shall not remove any of the Vehicle(s) and/or Equipment therefrom for more than thirty (30) days without Creditor's prior written consent. Obligor shall use the Vehicle(s) and/or Equipment in a careful manner and shall at all times, at its sole expense, keep the Vehicle(s) and/or Equipment in good operating condition, repair and appearance and comply with all laws, ordinances, regulations or requirements of any governmental authority, official, board or department relating to its installation, possession, use or maintenance. Obligor shall not make any alterations, additions, or improvements to the Vehicle(s) and/or Equipment which are not readily removable without causing damage to or reducing the value of the Vehicle(s) and/or Equipment.

**K. Assignment. OBLIGOR SHALL NOT ASSIGN, PLEDGE, MORTGAGE OR OTHERWISE TRANSFER OR ENCUMBER ANY OF ITS RIGHTS UNDER THIS AGREEMENT OR IN THE VEHICLE(S) AND/OR EQUIPMENT OR ANY PART THEREOF, NOR SUBLET ANY PART THEREOF, NOR PERMIT ITS USE BY ANYONE OTHER THAN OBLIGOR AND ITS REGULAR EMPLOYEES, WITHOUT CREDITOR'S PRIOR WRITTEN CONSENT. ANY SUCH PURPORTED TRANSFER, ASSIGNMENT OR OTHER ACTION WITHOUT CREDITOR'S WRITTEN CONSENT SHALL BE VOID.**

Creditor may, without notice, transfer or assign this Agreement or any interest herein and may mortgage, pledge, encumber or transfer any of its right or interest in and to this Agreement and/or the Vehicle(s) and/or Equipment or any part thereof and, without limitation, each assignee, transferee and mortgagee shall have the right to further transfer or assign its interest. Each such assignee, transferee, mortgagee and pledgee shall have all of the rights (but none of the obligations) of Creditor under this Agreement, and Obligor hereby acknowledges notice of Creditor's intended assignment of Creditor's interest in this Agreement and, upon such assignment, Obligor agrees not to assert against any of such transferee, assignee, mortgagee or pledgee any defense, claim, counterclaim or set-off that Obligor may have against Creditor, whether arising under this Agreement, transaction or otherwise. Any assignee of Creditor's rights under this Agreement shall be considered a third party beneficiary of all of Obligor's representations, warranties and obligations hereunder to Creditor. Obligor agrees that after receipt by Obligor of written notice of an assignment from Creditor or from Creditor's assignee, all periodic installments and other amounts which are then and thereafter due under this Agreement shall be paid unconditionally to such assignee at the place of payment designated in such notice. Obligor acknowledges that any assignment of Creditor's interest would neither materially change the Obligor's obligations hereunder nor materially increase the burden or risk imposed on the Obligor under this Agreement. Obligor further acknowledges that an assignment by the Creditor of its interest hereunder will be permitted even if the assignment would be deemed to materially affect the Obligor's interest.

**L. License and Registration Fees.** Obligor agrees to title and register the Vehicle(s) and/or Equipment with the appropriate Department of Motor Vehicles within 30 days of the date of this Agreement listing Creditor as first lienholder and having said title and/or proof of lien forwarded to Creditor. **FAILURE TO PROVIDE SATISFACTORY PROOF OF TITLE AND REGISTRATION SHALL CONSTITUTE AN EVENT OF DEFAULT AND MAY RESULT IN THE REPOSSESSION OF**

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

THE COLLATERAL BY CREDITOR AND THE IMPOSITION OF A PENALTY FEE AND FEES AT A RATE OF $25.00 PER DAY.

**M. Performance.** Obligor covenants and agrees at all times to keep the Vehicle(s) and/or Equipment free and clear of all levies, liens and encumbrances, and to pay all charges, taxes and fees that may now or hereafter be imposed upon the ownership, sale, purchase, possession or use of the Vehicle(s) and/or Equipment (except taxes on or measured by Creditor's income) and shall give Creditor immediate written notice of any of the foregoing and hereby indemnifies Creditor against any loss caused thereby. If Obligor shall fail to duly and promptly perform any of its obligations under this Agreement with respect to the Vehicle(s) and/or Equipment, Creditor may, at its option, but without the duty to do so, perform any act or make any payment, which Creditor deems necessary for the maintenance and preservation of the Vehicle(s) and/or Equipment and Creditor's title thereto, including payments for satisfaction of liens, repairs, taxes, fines, levies and insurance. All sums so paid or incurred by Creditor, together with interest thereon at 12 percent per annum, and all reasonable legal fees incurred by Creditor in connection therewith, shall be additional rent under this Agreement and payable by Obligor to Creditor on demand. The performance of any act or payment by Creditor as aforesaid shall not be deemed a waiver or release of any obligation or default on the part of Obligor, all of Creditor's remedies being cumulative.

**N. Irrevocable Nature of Agreement; Limited Prepayment Rights. THIS AGREEMENT IS IRREVOCABLE AND MAY NOT BE CANCELED, TERMINATED, OR REVOKED BY OBLIGOR DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER.** Obligor agrees that this Agreement is irrevocable for the Term, that Obligor's obligations under this Agreement are absolute and unconditional and shall continue without abatement and regardless of any disability of Obligor to use the Vehicle(s) and/or Equipment or any part thereof because of any reason including, but not limited to war, act of God, governmental regulations, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Vehicle(s) and/or Equipment to operate properly, termination by operation of law or any other cause. Obligor further agrees that it shall have no right to prepay its obligations hereunder, in whole or in part, and hereby unconditionally waives any right of prepayment it may have under applicable law except that Obligor shall have a right to prepayment if no event of default under this Agreement or any other agreement between Obligor and Creditor or its affiliates has occurred and at least 12 monthly payments have been made as scheduled and Obligor has paid all outstanding amounts and has paid an additional Prepayment Penalty calculated as follows:

| Payment Penalty Rate | | | | |
|---|---|---|---|---|
| Months Paid | Article 1B Term | | | |
| | 84 months + | 72-83 months | 60-71 months | 48-59 months | Up to 47 months |
| 12-24 | 5% | 5% | 5% | 5% | 5% |
| 25-36 | 4% | 4% | 3% | 3% | 3% |
| 37-48 | 3% | 3% | 2% | 1% | |
| 49-60 | 2% | 2% | 1% | | |
| 61-72 | 1% | | | | |

Prepayment Penalty = Unpaid amount of the Advance multiplied by the Prepayment Penalty Rate.

**O. Power of Attorney.** Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to execute, apply, amend, file, or take any reasonably necessary action to confirm or perfect Creditor's security interest in the Vehicle(s) and/or Equipment.

**P. Agreement to Replace Lost or Misplaced Documents and to Correct Misstated or Inaccurate Documents.** Regardless of the reason for any loss, misplacement, or inaccuracy in any document evidencing and/or securing this Agreement, Obligor agrees to execute and/or initial and deliver any and all "Replacement Documents" as defined in this paragraph. Obligor agrees to deliver to Creditor any documents Creditor deems necessary to replace or correct the lost, misplaced, misstated or inaccurate

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

document(s). The documents Creditor requests Obligor to execute and/or initial and deliver pursuant to this paragraph shall hereinafter be referred to as "Replacement Documents". Obligor agrees to deliver the "Replacement Documents" within 10 (ten) days after receipt by Obligor of a written request from Obligor for them.

Q. **Continuing Right to Obtain Credit Reports.** Obligor agrees that Creditor may obtain Obligor's credit report, credit score or other consumer report for connection with continuation of the extension of credit described in this Agreement, collection of amounts owed under this Agreement and enforcement of this Agreement.

## ARTICLE 3 – INSURANCE

A. **Physical Damage and Liability Insurance.** Obligor shall, at its expense, keep the Vehicle(s) and/or Equipment fully insured in favor of Creditor against loss, fire, theft, damage or destruction from any cause whatsoever in an amount not less than the full replacement cost of the Vehicle(s) and/or Equipment without consideration for depreciation. Obligor shall also provide such additional insurance against injury, loss or damage to persons or property arising out of the use or operation of the Vehicle(s) and/or Equipment as is customarily maintained by the owners of like property, with companies satisfactory to Creditor. Each policy shall provide that, as to the interest or coverage of Creditor or Creditor's assignee, the insurance afforded thereby shall not be suspended, forfeited or in any manner prejudiced by any default or by any breach of warranty condition, or covenant on the part of Obligor. Creditor, at its option, may apply any proceeds of such insurance to replace or repair such Vehicle(s) and/or Equipment and/or to Obligor's obligations hereunder. Obligor also shall carry public liability insurance, both personal injury and property damage covering the Vehicle(s) and/or Equipment. All such insurance shall be in form, issued by such insurance companies and be in such amounts as shall be satisfactory to Creditor, and shall provide that losses, if any, shall be payable to Creditor and Creditor's assignee as "loss payee", and all such liability insurance shall include Creditor and Creditor's assignee as an "additional insured." Obligor shall pay the premiums for such insurance and deliver to Creditor satisfactory evidence of the insurance coverage required hereunder. Each insurer shall agree, by endorsement upon the policy or policies issued by it or by independent instrument furnished to Creditor, that it will give Creditor at least ten (10) days prior written notice of the effective date of any alternation or cancellation of such policy, and that Creditor's coverage under such policy shall not be affected by any default, misrepresentation or other breach by Creditor or Obligor under this Agreement or such policy.

B. **Attorney-in-Fact.** Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to make claim for, receive payments of and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. In any event, Obligor shall be liable for any loss, damage, expense or costs suffered or incurred by Creditor relating to or in any manner pertaining to this Agreement, the Vehicle(s) and/or Equipment or the use or operation of the Vehicle(s) and/or Equipment.

C. **Failure to Maintain Insurance.** In the event Obligor fails to procure and maintain the required insurance or provide evidence of such insurance, such failure shall be deemed to be a material default hereunder and the Vehicle(s) and/or Equipment shall be immediately returned to Creditor. Creditor, at its sole discretion, and in addition to any other remedy, may impose and collect liquidated damages of $150 per day for each day that Obligor has possession of the Vehicle(s) and/or Equipment and is without required insurance. In addition, and not as an alternative to such liquidated damages, Creditor may, at Creditor's option, purchase insurance (or place the Vehicle(s) and/or Equipment on an existing policy) at a cost to Obligor of $150 per day (until satisfactory evidence that Obligor has procured and currently maintains the required insurance is provided to Creditor), to protect Creditor's interests. This insurance need not protect Obligor's interests. The coverage that Creditor purchases or maintains may not pay any

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

claim by Obligor or any claim that is made against Obligor. Creditor has the obligation to purchase such insurance and Creditor's purchase does not forgive any default or otherwise modify the Obligor's obligations, including the obligation to maintain insurance.

**D. Indemnification and Hold Harmless**. In the event that Obligor for any reasons fails to procure and maintain required insurance, the Obligor agrees to defend, indemnify (that is, Obligor will pay Creditor) and hold Creditor (including its parent company, affiliates, subsidiaries, officers, directors and employees) harmless for any and all losses, damages, claims, injuries and expenses (including attorneys' fees, costs and disbursements) that arise from or relate to this Agreement, or from the Obligor's use or possession of the Vehicle(s) and/or Equipment. Obligor's agreement to indemnify Creditor and hold Creditor harmless will survive termination of this Agreement and repossession of the Vehicle(s) and/or Equipment. It is the intention of the parties to transfer all liability from Creditor to Obligor whether the liability is caused in whole or in part by Creditor, Obligor or both. Obligor's obligation to defend, indemnify and hold harmless Creditor, shall in no manner be construed to limit or relieve Obligor's obligation to provide the insurance coverage required herein.

## ARTICLE 4 – RISK OF LOSS

Obligor shall bear the entire risk of loss, theft, destruction of or damage to the Vehicle(s) and/or Equipment or any part thereof from any cause whatsoever during the term of this Agreement and shall not be relieved of its liabilities under <u>Article 1</u> hereof or any other obligation hereunder because of any such occurrence. In the event of damage to any item of the Vehicle(s) and/or Equipment, Obligor, at its sole expense and at the option of Creditor, shall immediately place the same in good condition and repair. If Creditor determines that any item of Vehicle(s) and/or Equipment is lost, stolen or destroyed or damaged beyond repair, Obligor, at its sole expense and at the option of Creditor shall pay Creditor in cash (in addition to any other amount due hereunder) the unpaid balance of the total periodic installments for the unexpired term hereof attributable to such Vehicle(s) and/or Equipment.

## ARTICLE 5 – DEFAULT

As used in this Agreement, the term "Event of Default" shall mean any one or more of the following:

(a) the failure by a Obligor to make any payment when due hereunder.

(b) the failure by a Obligor to observe or perform (i) any other agreement or obligation to be observed or performed hereunder or under any agreement, document or instrument delivered to Creditor by or on behalf of any Obligor or otherwise relating to any of the Indebtedness (collectively, the "Other Documents"), or (ii) any other obligation of a Obligor to Creditor;

(c) any representation or warranty made by or on behalf of any Obligor in this Agreement or in any of the Other Documents shall at any time prove to have been incorrect or untrue when made;

(d) the making by a Obligor of any misrepresentation to Creditor or the failure on the part of a Obligor to disclose to Creditor any material fact in connection with this Agreement or otherwise, either contemporaneously herewith or at any time prior or subsequent to the execution hereof;

(e) the breach by a Obligor of any warranty contained herein or in any of the Other Documents, including, without limitation, Obligor's failure to obtain or maintain any insurance required by Creditor hereunder;

(f) any default in the payment of any indebtedness owed to any individual or entity other than Creditor, or any default in the performance or observance of the terms of any agreement, document or instrument

Page 7 of 12

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

pursuant to which such indebtedness was created, secured or guaranteed, and the effect of which default is to cause or permit the holder of any such indebtedness to cause the same to be due prior to its stated maturity (whether or not such default is waived by the holder thereof);

(g) the failure of a Obligor to pay, withhold, collect or remit when asserted or due any tax, assessment or other sum payable with respect to the Vehicle(s) and/or Equipment or any security for any of the Indebtedness (including, without limitation, any premium on any insurance policy with respect to any of the Vehicle(s) and/or Equipment or any security for any of the Indebtedness, or any insurance policy assigned to Creditor as security for any of the Indebtedness), or the making of any tax assessment against any Obligor by the United States or any state or local government;

(h) the entry of a judgment against a Obligor or any attachment, levy or execution against any property of a Obligor, or the condemnation or seizure of any part of any property of a Obligor by any governmental authority or court at the insistence of such governmental authority;

(i) the death of a Obligor, if an individual, or the death of any individual member of a Obligor, if a partnership or joint venture;

(j) the change in control, management, ownership or operations of a Obligor, or the suspension of the usual business of a Obligor, or the dissolution, liquidation or other termination of existence of a Obligor, or the adoption of any resolution for the dissolution, liquidation or other termination of existence of a Obligor, or the sale of material assets of an Obligor;

(k) the failure of a Obligor (or any admission in writing by a Obligor of its inability) to generally pay its debts as they become due or the insolvency or business failure of a Obligor;

(l) the filing of an application for appointment of trustee, custodian or receiver for a Obligor or of any part of a Obligor's property, or an assignment for the benefit of creditors by a Obligor, or the making or sending of notice of any intended bulk transfer by a Obligor;

(m) the filing of a petition in bankruptcy by or against a Obligor, or the commencement by or against a Obligor of any proceeding under any bankruptcy or insolvency law or statute, or any law or statute, relating to the relief of debtors or arrangement of debt, readjustment of indebtedness, reorganization, receivership or composition, or the extension of indebtedness; or

(n) such a change in the condition or affairs (financial or otherwise) of a Obligor as shall, in the sole opinion of Creditor increase Creditor's risk with respect to this Agreement, the Vehicle(s) and/or Equipment or any of the Indebtedness or any security therefor.

Upon the occurrence of an Event of Default, then, at Creditor's option, and at any time, the entire unpaid total periodic installments for the balance of the Term hereof plus all outstanding fees and assessments shall be at once due and payable and/or Creditor may, without demand or legal process, terminate this Agreement and enter upon the premises where the Vehicle(s) and/or Equipment is located, take possession of and remove same, and exercise any one or more of the following rights and remedies, without liability to Obligor therefor and without affecting Obligor's obligations hereunder: (i) sell, lease, or otherwise dispose of the Vehicle(s) and/or Equipment or any part thereof at one or more public or private sales, agreements or other dispositions, at wholesale or retail, for such consideration, on such terms, for cash or on credit, as Creditor many deem advisable, on at least ten (10) days' prior notice to Obligor of any public sale or of the time after which private sale, agreement or other disposition may be made (which notice Obligor acknowledges is reasonable); and/or (ii) retain the Vehicle(s) and/or Equipment or any part thereof, crediting Obligor with the then reasonable rental value thereof for the balance of the Term of this Agreement, and/or (iii) require Obligor to assemble all Vehicle(s) and/or Equipment at Obligor's sole expense, for Creditor's benefit, at a place reasonably designated

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

This is a copy view of the Authoritative Copy held by the designated custodian

by Creditor, and/or (iv) pursue any other remedy granted by any existing or future document executed by Obligor or by law.

Obligor agrees to pay all Creditor's expenses, including (but not limited to) the costs of repossessing, storing, repairing and preparing Vehicle(s) and/or Equipment for sale or agreement, commissions payable in connection with any such sale or agreement, and reasonable attorney's fees if an attorney shall be consulted. The net proceeds realized from any such sale, agreement or other disposition or the exercise of any other remedy, and after payment of all expenses (which amount shall be retained by Creditor), shall be applied toward payment of the discounted unpaid periodic installment payments hereunder through the end of the Term of the Agreement and any other amounts due hereunder, with Obligor to remain liable for any deficiency. Any amount due Creditor under this Article 5 shall be deemed liquidated damages for the breach hereof and not a penalty. All rights and remedies of Creditor shall be cumulative and not alternative and are in addition to any other remedies provided by law. Creditor's failure to exercise or delay in exercising any right or remedy shall not be construed as a waiver thereof, nor shall a waiver on one occasion be construed to bar the exercise of any right or remedy on a future occasion. In addition, to the extent permitted by applicable law, Obligor also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Creditor to sell, lease or otherwise use any Vehicle(s) and/or Equipment in mitigation of Creditor's damages or which may otherwise limit or modify any of Creditor's rights or remedies.

## ARTICLE 6 – SECURITY DEPOSIT

A "Security Deposit" of $0.00 or any amount stated in an Exhibit A executed after the date of this Agreement shall be paid by Obligor prior to Creditor's acceptance of this Agreement. In the event the Term of this Agreement does not commence for any reason whatsoever, the Security Deposit shall be retained by Creditor not as a penalty but as liquidated damages to cover Creditor's administrative expenses in processing the application for this Agreement. Otherwise, the Security Deposit will be applied to the first and last scheduled payments under this Agreement at the time such payments are due.

## ARTICLE 7 – LIQUIDATED DAMAGES

Whenever any periodic installment or other amount payable to Creditor by Obligor hereunder is not paid within ten (10) days of such payment's due date, Obligor agrees to pay Creditor, on demand, as liquidated damages and not as a penalty; (a) with respect to payments, an administrative fee equal to six cents ($.06) for each one dollar ($1.00) of such delayed periodic payment, or the maximum amount permitted under applicable law, whichever is less, and (b) with respect to periodic payments overdue for more than thirty (30) days and all other amounts payable to Creditor by Obligor hereunder (including accelerated amounts due if Obligor is in default), a late charge calculated at the rate of 18% per annum on such overdue amount, or the maximum amount permitted under applicable law, whichever, is less, from the date such payment is due until the date such payment is made in full to Creditor. Such amount(s) shall be payable in addition to all amounts payable by Obligor as a result of exercise of any of the remedies herein provided. Obligor agrees to also reimburse Creditor for any expenses (including Creditor's attorneys' fees and costs) arising out of or caused by enforcement of this Agreement.

## ARTICLE 8 – TERMINATION AND FURTHER ASSURANCES

Obligor agrees that upon expiration of this Agreement it shall pay promptly all costs, expenses and obligations of every kind and nature relating to the Vehicle(s) and/or Equipment which may arise or become due during the Term of this Agreement, whether or not specifically mentioned herein. No periodic installment or other sums payable by Obligor pursuant to this Agreement shall be subject to set-off, deduction, counterclaim, abatement, recoupment, or reduction, nor shall this Agreement terminate, nor shall Obligor be entitled to any credit against such periodic installment or other sums for any reason whatsoever, including, but not in any way limited to, any damage to or destruction of the Vehicle(s) and/or Equipment or any item thereof, any limitation, restriction,

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

deprivation or prevention of, or any interference with Obligor's use of the Vehicle(s) and/or Equipment or any item thereof, whether the sale shall be lawful or unlawful, any dispossession of Obligor from the Vehicle(s) and/or Equipment or any item thereof by title paramount or otherwise, the requisition or taking by statute or by exercise of the power of eminent domain or other governmental authority or otherwise, or by injunction or by any private person, of the Vehicle(s) and/or Equipment or any item thereof, the prohibition of Obligor's business in whole or in part, whether pursuant to law or otherwise or any reason whether similar or dissimilar to the foregoing.

## ARTICLE 9 – CREDITOR'S SET OFF, CROSS COLLATERAL, CROSS DEFAULT

In the event that the parties hereto have entered into any separate agreement(s), note(s), or lease(s) whereby Obligor has any financial obligation to Creditor, or any of Creditor's affiliated companies, Creditor retains the right of set off for any monies due and owing Creditor by Obligor on account of this Agreement with respect to any other separate agreements, notes or leases, including any advance payments made or security deposits made by Obligor and held by Creditor. All payments made by Obligor shall be applied to the oldest debt first, whether on account of this Agreement or any other indebtedness, including parts, shop or repair invoices owed by Obligor to Creditor or to any related or affiliated companies. In order to induce Creditor to make the Advance described in this Agreement, Obligor agrees that all property covered or acquired by Obligor or Obligor's assignor under presently existing or hereinafter created separate agreements, note(s), or lease(s) between Creditor and Obligor or Obligor's assignor or with funds provided by Creditor to or on behalf of Obligor or Obligor's assignor ("Additional Collateral") shall secure the payment and performance of all of Obligor's liabilities and obligations to Creditor of every kind and character, whether joint or several, direct or indirect, absolute or contingent, due or to become due, and whether under presently existing or hereafter created agreement(s), note(s) or lease(s), including, but not limited to, obligations under this Agreement. Obligor grants Creditor a security interest in all Collateral and Additional Collateral and such security interest shall not be terminated in whole or in part until and unless all indebtedness of every kind, due or become due, owed to Creditor by Obligor is fully paid and satisfied and the terms of every agreement, note, and lease have been fully performed by Obligor. It is further agreed that Creditor is to retain Creditor's security interest in all property covered by all agreement(s), note(s), and lease(s) held or acquired by Creditor, as security for payment and performance under each such agreement, note, and lease, notwithstanding the fact that one or more of such agreement(s), note(s), or lease(s) may become fully paid.

An Event of Default under this Agreement shall constitute a default under any other such separate agreement(s), note(s) or lease(s) whereunder Obligor has a financial obligation to Creditor, or any of its affiliated companies.

## ARTICLE 10 – INDEMNITY

Obligor shall and does hereby indemnify and save Creditor, its directors, officers, employees, agents, servants, successors and assigns, harmless from any and all liabilities (including, without limitation, negligence, tort and strict liability), damages, expenses, claims, actions, proceedings, judgments, settlements, losses, liens and obligations (each, an "Indemnified Claim"), including (without limitation) counsel fees and costs, arising out of the ordering, purchase, delivery, rejection, non-delivery, ownership, selection, possession, financing, operation (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Obligor), maintenance, delivery, transportation, storage, repair, return or other disposition of the Vehicle(s) and/or Equipment, any claims arising under federal, state or local environmental protection and hazardous substance clean up laws and regulations and any claims of patent, trademark or copyright infringement or, in the event that Obligor shall be in default hereunder, arising out of the condition of any item of Vehicle(s) and/or Equipment sold or disposed of after use by Obligor, including (without limitation) claims for injury to or death of persons and for damage to property. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the expiration, termination or cancellation of this Agreement for any reason whatsoever and irrespective of whether Creditor ever accepts this Agreement. Obligor shall give Creditor prompt written notice of any Indemnified Claim and, at Creditor's sole

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

This is a true view of the Authoritative Copy
by the designated custodian

option, shall defend Creditor against any Indemnified Claim at Obligor's sole expense at the cost selected by Creditor. Obligor is an independent contractor and nothing contained herein shall authorize Obligor or any other person to operate any item of Vehicle(s) and/or Equipment so as to incur any liability or obligation for or on behalf of Creditor.

## ARTICLE 11 – GENERAL

A. **Beneficiaries.** The Creditor and Obligor agree that this Agreement shall inure to the benefit of, and be binding upon the parties hereto, their successors, assigns, transferees and their heirs, executors, administrators and legal representatives.

B. **Change in Legal Ownership.** Obligor agrees to provide written notice to Creditor of any change in its ownership structure and to provide copies of any and all documents evidencing such change thirty (30) days prior to the effectiveness of such change. Creditor reserves the right to terminate the Agreement and take possession of the Vehicle(s) and/or Equipment upon a change in the ownership structure of Obligor which is not acceptable to Creditor.

C. **Entire Agreement.** Except as provided in an Exhibit attached pursuant to Article 1, this Agreement constitutes the entire agreement between the parties, and cannot be amended or altered in any manner except in writing signed by both parties. No oral modifications shall be permitted or recognized.

D. **Notice.** Any notice to a party hereunder shall be deemed given when mailed to said party by certified mail, return receipt requested at its address set forth herein or such other address as either may designate for itself in such notice to the other. Whenever the sense of this Agreement requires, words in the singular shall be deemed to include the plural and words in the plural shall be deemed to include the singular. If more than one Obligor is named herein the liability of each shall be joint and several. This Agreement (along with any separate promissory note or instrument executed by Obligor relating to this Agreement) constitutes the entire mutual understanding of the parties regarding the within subject matter and may not be modified except in writing, signed by the party against whom such modification is asserted. Upon the request of Creditor, Obligor shall at any time and from time to time after the execution and delivery of the Agreement, execute and deliver such further documents and do such further acts as Creditor may reasonably request in order fully to effect the purposes of this Agreement, and any assignment hereof, Obligor hereby authorizes Creditor, at its option and as contemplated by Section 9-509 of the UCC or otherwise, to file financing statements covering the Vehicle(s) and/or Equipment signed only by Creditor on a reproduction of this Agreement, and agrees to pay Creditor the actual fee for such filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. IN THE EVENT THE INTEREST RATE CHARGED UNDER THIS AGREEMENT EXCEEDS THE MAXIMUM RATE OF INTEREST ALLOWED BY APPLICABLE LAW, THEN THE EFFECTIVE RATE OF INTEREST HEREUNDER SHALL BE AUTOMATICALLY REDUCED TO THE MAXIMUM LAWFUL RATE ALLOWABLE UNDER THE APPLICABLE USURY LAWS.

E. **Waiver.** No agent or employee of the seller of the Vehicle(s) and/or Equipment is authorized to bind Creditor to this Agreement, to alter or waive any term or condition hereof, or to add any provision hereto, notwithstanding any compensation or benefit that may be given by Creditor to seller or any agent or employee of seller.

F. **Captions.** Captions, headings and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify, or modify the terms and provisions hereof.

G. **GPS:** Obligor agrees to allow Creditor to equip the Vehicle(s) and/or Equipment with a Global Positioning System ("GPS") unit or other location tracking system that will allow the Vehicle(s) and/or Equipment to be monitored by Creditor. Obligor is hereby notified of the tracking device

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

and the tracking. Any tampering with the GPS unit or other location tracking device will cause a default under the Agreement.

H. **Construction; Jurisdiction; Waiver of Jury Trial.** The substantive laws of the State of New York shall govern the validity, construction, enforcement, and interpretation of this Agreement. Obligor hereby consents to the personal jurisdiction of the state and federal courts located in the State of New York in connection with any controversy relating to this Agreement, waives any argument that venue in such forums is not convenient and agrees that any litigation instigated by the Obligor against the Creditor in connection herewith shall be venued in either the New York State Court in Nassau County, New York or the United States District Court for the Southern District of New York. THE OBLIGOR AND CREDITOR EACH WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT, THE OTHER DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, IN ANY ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY OR PARTIES, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. THE OBLIGOR AND CREDITOR EACH AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR THE OTHER DOCUMENTS OR ANY PROVISION HEREOF OR THEREOF. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT AND THE OTHER DOCUMENTS.

**IN WITNESS WHEREOF**, the names of Advantage Funding Commercial Capital Corp., and **QUO VADIS EXPRESS INC.** have been hereunto subscribed by the respective persons or officers thereunto duly authorized.

Advantage Funding Commercial Capital Corp.

By: _Milton Wilcher_

Its: Funding Manager

Name: Milton Wilcher

DATE: 8/22/2018

**QUO VADIS EXPRESS INC.**

Obligor's Name

By: X _Renata Jasinska_

Printed Name: Renata Jasinska

Its: President

Address: 600 Bonnie Ln
Elk Grove Village, IL 60007-1912

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

# ADDENDUM AND AGREEMENT
## TO AMEND/CORRECT CONTRACT TERM(S)

This is a copy view of the Authoritative Copy held by the designated custodian

### BETWEEN

**Advantage Funding Commercial Capital Corp.**
3 Dakota Drive Suite 210
Lake Success, New York 11042
(866) 392-1300
**(Hereinafter "Advantage")**

and

**QUO VADIS EXPRESS INC.**

600 Bonnie Ln
Elk Grove Village IL 60007-1912

Hereinafter "Obligor," "Lessee," "Debtor," or "Guarantor" as the case may be)

The undersigned parties hereto acknowledge and agree that account number ▮▮▮▮2497 for a 2016 INTERNATIONAL DuraStar 4300 w/ 26' MickeyTruck Bodies Box S/N 2000V15 with VIN 1HTMMMMLXGH145353 will be amended as outlined in the section below marked with an X.

[ ]   The monthly payment as described in the underlying Chattel Mortgage, Motor Vehicle Lease, or Retail Instalment Contract, as the case may be, and all related documents is changed

FROM:

TO:

[ X ]   The **Vehicle Year** as described in the underlying Chattel Mortgage, Motor Vehicle Lease, or Retail Instalment Contract, as the case may be, and all related documents is changed

FROM: 2015

TO: 2016

[ ]   The Obligor, Lessee, Debtor or Guarantor **name and/or title** (if applicable), described in the underlying Chattel Mortgage, Motor Vehicle Lease, or Retail Instalment Contract, as the case may be, and all related documents is changed

FROM:

TO:

**MISCELLANEOUS:**
The provisions hereof are in addition to those contained in the Chattel Mortgage, Motor Vehicle Lease, or Retail Instalment Contract and shall be binding upon Obligor, Lessee, Debtor and their successors and assigns, in favor of Advantage, its successors and assigns. Except as hereby supplemented and superceded, the provisions of the Chattel Mortgage, Motor Vehicle Lease, or Retail Instalment Contract, and all related documents continue in full force and effect. IN WITNESS WHEREOF, the parties have executed this ADDENDUM AND AGREEMENT TO CHANGE/CORRECT CONTRACT TERM(S) as of the Date of the underlying Chattel Mortgage, Motor Vehicle Lease or Retail Instalment Contract as set forth below.

**ADVANTAGE FUNDING COMMERCIAL CAPITAL CORP.**

By: *Milton Wilcher*
— B96C4A3F335B4FB...
Milton Wilcher Funding Manager
**(Printed Name and Title)**
8/22/2018
**(Date)**

**QUO VADIS EXPRESS INC.**

By: *Renata Jasinska*
— C168D40E2A2249E...
Renata D Jasinska President
8/21/2018
**(Date)**

**EXHIBIT**

9

DocuSign Envelope ID: B63694B3-5ECD-4349-B77D-EFF8713130E8

This is a copy view of the Authoritative Copy
by the designated custodian



# Advantage Funding
### Transportation Financing & Leasing Specialists

**EXHIBIT**
**10**

## CONTINUING GUARANTY

**THIS GUARANTY** ("Guaranty") is made and entered into as of <u>August 20, 2018</u>, by the parties hereto executing this Guaranty as "Guarantor" (each such party is hereinafter referred to as "Guarantor") in favor of **ADVANTAGE FUNDING COMMERCIAL CAPITAL CORP., 3 Dakota Drive, Ste.210 Lake Success, NY 11042** (hereinafter referred to as "Advantage"), guaranteeing the Indebtedness (as hereinafter defined) of **QUO VADIS EXPRESS INC.** (hereinafter referred to as "Obligor"). FOR VALUE RECEIVED, and/or as an inducement to Advantage to now or hereafter enter into, purchase or otherwise acquire the agreements, accounts and/or other obligations evidencing and/or securing Obligor's Indebtedness, each such Guarantor agrees as follows:

**SECTION 1. <u>Guaranty of the Obligations</u>.** Guarantor hereby absolutely, irrevocably and unconditionally guarantees the full, prompt and punctual payment, performance and satisfaction when due (whether at maturity, by acceleration or otherwise) of all of Obligor's present and future indebtedness and obligations to Advantage, whether direct or indirect, joint or several, absolute or contingent, secured or unsecured, matured or un-matured, and whether originally contracted with or otherwise acquired by Advantage, including, without limitation, principal, interest, late charges, and all liabilities, losses, costs, indemnification obligations, and attorneys' fees, and all expenses, that Advantage may suffer due to either Obligor's or Guarantor's default (all of which liabilities, obligations and Indebtedness are herein individually and collectively called the "Indebtedness"), which Indebtedness shall be conclusively presumed to have been created in reliance upon this Guaranty.

**SECTION 2. <u>Joint, Several and Solidary Liability</u>.** Guarantor further agrees that its obligation for the prompt and punctual payment, performance and satisfaction of Obligor's Indebtedness are independent of any agreement or transaction with any other third parties, and shall be on a joint and several" and "solidary" basis along with Obligor to the same degree and extent as if Guarantor had been and/or will be a co-borrower, co-principal obligor and/or co-maker of Obligor's Indebtedness. In the event that there is more than one Guarantor under this Guaranty, or in the event that there are other guarantors, endorsers, sureties or any other party who may at any time become liable for all or any portion of Obligor's Indebtedness (each, an "Other Obligor"), each Guarantor's obligations and liabilities hereunder shall be on a "joint and several" and "solidary" basis along with such Other Obligors.

**SECTION 3. <u>Duration; Cancellation of Guaranty</u>.** This Guaranty and Guarantor's obligations and liabilities hereunder shall remain in full force and effect until such time as Obligor's Indebtedness shall be fully and finally paid, performed and/or satisfied, until such time as this Guaranty may be cancelled by Advantage under a written cancellation instrument in favor of Guarantor or otherwise as stated herein.

**SECTION 4. <u>Default by Obligor</u>.** Immediately upon Obligor's default under any of its Indebtedness in favor of Advantage, Advantage may make demand upon Guarantor and Guarantor unconditionally and absolutely agrees to pay the full then unpaid amount of all of Obligor's Indebtedness (whether at stated maturity, by required prepayment, declaration, acceleration or otherwise) and/or perform any covenant or agreement hereunder guaranteed. Such payment or payments shall be made immediately following demand by Advantage at Advantage's offices indicated above.

**SECTION 5. <u>Additional Covenants</u>.** Guarantor further agrees that Advantage may, at its sole option, at any time, and from time to time, without the consent of or notice to Guarantor, and without incurring any responsibility to Guarantor, and without affecting, impairing or releasing the obligations of Guarantor under this Guaranty: (a) discharge or release any party (including, but not limited to, Obligor, secondary obligors of Obligor's indebtedness or any co-guarantor under this Guaranty) who is or may be liable to Advantage for Obligor's Indebtedness; (b) sell at public or private sale, exchange, release, impair, surrender, substitute, realize upon or otherwise deal with, in any manner and in any order and upon such terms and conditions as Advantage deems best at its uncontrolled discretion, any equipment and/or any collateral now or hereafter directly or indirectly securing repayment of Obligor's Indebtedness (all such equipment and/or all such collateral shall hereinafter be referred to as the "Equipment"), including without limitation, the purchase of all or any part of such collateral for Advantage's own account; (c) change the manner, place or terms of payment and/or available credit (including without limitation increase or decrease in the amount of such payments, available credit or any interest rate adjustments), or change or extend the time of payment of or renew, as often and for such periods as Advantage may determine, or alter Obligor's Indebtedness or grant any other indulgence to Obligor and/or any secondary obligors of Obligor's Indebtedness or any co-guarantor under this Guaranty; (d) settle or compromise Obligor's Indebtedness with Obligor and/or any third party or refuse any offer of performance with respect to, or substitutions for, the Indebtedness; (e) take or accept any other security or guaranty for any or all of Obligor's Indebtedness; and/or (f) enter into, deliver, modify, amend or waive compliance with, any instrument, agreement or arrangement evidencing, securing or otherwise affecting, all or any part of Obligor's Indebtedness.

**SECTION 6. <u>No Release of Guarantor</u>.** Guarantor's obligations and liabilities under this Guaranty shall not be released, impaired, reduced or otherwise affected by, and shall continue in full force and effect, notwithstanding the occurrence of any event, including without limitation any one or more of the following events: (a) death, insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of authority (whether corporate, partnership or trust) of Obligor or any Other Obligor or any other defense based on or arising out of the lack of validity or unenforceability of the Indebtedness or any agreement or instrument relating thereto or any provisions thereof and/or Obligor's absence or cessation of liability thereunder for any reason, including without limitation, Advantage's failure to preserve any right or remedy against Obligor; (b) any change in Obligor's financial condition; (c) partial payment or payments of any amount due and/or outstanding under Obligor's Indebtedness; (d) any change in Obligor's management, ownership, identity or business or organizational structure; (e) any payment by Obligor or any other party to Advantage that is held to constitute a preferential transfer or a fraudulent conveyance under any applicable law, or for any reason, Advantage is required to fund such payment or pay such amount to Obligor or to any other person; (f) any sale, lease or transfer, whether or not commercially reasonable, of all or any part of Obligor's assets and/or any assignment, transfer or delegation of Obligor's Indebtedness to any third party (whereby this Guaranty shall continue to extend to all sums due from or for the account of Obligor and/or the new or substituted legal entity); (g) any failure to perfect any lien or security interest securing the Indebtedness or preserve any right, priority or remedy against any Equipment; (h) any interruption, change or cessation of relations between Guarantor and Obligor; (i) any defect in, damage to, destruction of or loss of or interference with possession

DocuSign Envelope ID: B63894B3-5ECD-4349-B77D-EFF8713130E8

or use of any Equipment for any reason by Obligor or any other person; (j) any act or omission by Advantage which might affect the risk of Guarantor or Guarantor's risk, including without limitation, negligent administration of transactions with Obligor; and/or (k) any other circumstance whatsoever, whether similar or dissimilar to the foregoing, which might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or surety or which might otherwise limit recourse against Guarantor.

**SECTION 7. Waivers by Guarantor.** Guarantor waives, for the benefit of Advantage: (a) notice of the acceptance of this Guaranty; (b) notice of the existence, creation or incurrence of new and/or additional debt owing from Obligor to Advantage; (c) presentment, protest and demand, and notice of protest, demand, nonpayment, nonperformance and dishonor of any and all agreements, notes or other obligations signed, accepted, endorsed or assigned to or by Advantage or agreed to between Obligor and Advantage; (d) notice of adverse change in Obligor's financial condition or any other fact which might materially increase the risk of Guarantor; (e) any claim, right or remedy which Guarantor may now have or hereafter acquire against the Obligor that arises hereunder and/or from the performance by any Other Obligor including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Advantage against the Obligor or any security which Advantage now has or hereafter acquires with respect to the Obligor, whether or not such claim, right or remedy arises in equity, under contract (express or implied), by statute, under common law or otherwise; (f) notice of any default by Obligor or any other person obligated in any manner for all or any portion of Obligor's Indebtedness and notice of any legal proceedings against such parties; (g) any right of contribution from any Other Obligors; (h) notice and hearing as to any prejudgment remedies; (i) any defense which is premised on an alleged lack of consideration of the obligation undertaken by Guarantor, including without limitation, any defense to the enforcement of this Guaranty based upon the timing of execution of this Guaranty and/or that this Guaranty had been executed after the execution date of any agreements evidencing the Indebtedness; (j) all exemptions and homestead laws; (k) any other demands and notices required by law; (l) all setoffs and counterclaims against Advantage and/or Obligor; (m) any defense based on the claim that Guarantor's liabilities and obligations exceed or are more burdensome than those of Obligor; (n) any defense which the Obligor may assert or be able to assert on the underlying Indebtedness or which may be asserted by Guarantor, including but not limited to (i) breach of warranty, (ii) fraud, (iii) statute of frauds, (iv) infancy, (v) statute of limitations, (vi) lender liability, (vii) accord and satisfaction, (viii) payment and/or (ix) usury.

**SECTION 8. Enforcement of Guarantor's Obligations and Liabilities.** Guarantor agrees that Advantage may commence an action against Guarantor without the necessity of first (i) attempting to collect Obligor's Indebtedness from Obligor or from any Other Obligor, (ii) attempting to exercise any rights Advantage may have against any Equipment, (iii) including Obligor or any Other Obligor as an additional party defendant in such a collection action against Guarantor, or (iv) pursuing any other remedy in Advantage's power or to mitigate damages. If there is more than one guarantor under this Guaranty, each Guarantor additionally agrees that Advantage may file an appropriate collection and/or enforcement action against any one or more of them, without impairing the rights of Advantage against any other guarantor under this Guaranty.

**SECTION 9. Successors and Assigns Bound.** Guarantor's obligations and liabilities under this Guaranty shall be binding upon Guarantor's successors, heirs, legatees, devisees, administrators, executors and assigns. Advantage may assign this Guaranty and any and all rights and interests included herein in Advantage's sole discretion without notice to Guarantor and the rights and remedies granted to Advantage under this Guaranty shall also inure to the benefit of Advantage's successors and assigns, without setoff, counterclaim, reduction, recoupment, abatement, deduction or defense based on any claim Guarantor may have against Advantage, such successors and assigns or subsequent holders of Obligor's Indebtedness. Guarantor shall not assign this Guaranty without the prior written consent of Advantage.

**SECTION 10. Governing Law; Waiver of Jury.** This Guaranty shall be construed liberally in favor of Advantage and shall be governed and construed in accordance with the substantive laws of the State of New York without regard to the conflicts of laws principles thereof. ANY ACTION, SUIT OR PROCEEDING RELATING DIRECTLY OR INDIRECTLY TO THIS GUARANTY OR THE RELATIONSHIP BETWEEN GUARANTOR AND ADVANTAGE, WILL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE WITHOUT A JURY. AS SUCH, GUARANTOR HEREBY WAIVES ANY RIGHT TO A JURY TRIAL IN ANY SUCH ACTION, SUIT OR PROCEEDING. IN THE EVENT OF LITIGATION, THIS GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO TRIAL BY THE COURT.

**SECTION 11. Severability.** If any provision of this Guaranty is held to be illegal, invalid or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable, this Guaranty shall be construed and enforceable as if the illegal, invalid or unenforceable provision had never comprised a part of it, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom.

**EACH GUARANTOR HAS READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS GUARANTY.**

By: X _Renata Jasinska_  (DocuSigned by)
Guarantor Signature

Date: 8/20/2018

Name: Renata Jasinska